## TARVIS SIMMS ET AL. *v.* WILFRED CHAISSON ET AL.
## (SC 17409)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued October 20, 2005—officially released February 21, 2006

*John R. Williams*, for the appellants (defendants).

*Barbara M. Schellenberg*, with whom were *Stuart M. Katz* and, on the brief, *Ari J. Hoffman*, for the appellees (named plaintiff et al.).

*Opinion*

VERTEFEUILLE, J. In this appeal, we are asked to decide whether the trial court abused its discretion in awarding substantial attorney's fees under General Statutes § 52-571c (b)[1] to plaintiffs who recovered only nominal damages. The defendants, Wilfred Chaisson and Michelle Chaisson, appeal from the judgment of the trial court awarding to the plaintiffs Tarvis Simms

---

[1] General Statutes § 52-571c (b) provides: "In any civil action brought under this section in which the plaintiff prevails, the court shall award treble damages and may, in its discretion, award equitable relief and a reasonable attorney's fee."

and Christopher Johnson[2] attorney's fees pursuant to § 52-571c (b). The defendants claim that the trial court improperly awarded attorney's fees to the plaintiffs after the jury awarded the plaintiffs only nominal damages. We disagree with the defendants, and, accordingly, we affirm the judgment of the trial court.

The record reveals the following facts and procedural history. Tarvis Simms' family is comprised of his wife, Maria Simms, his daughter, Denise Crosley, and Johnson, Maria Simms' son (Simms family). Tarvis Simms, Johnson and Crosley are African-Americans, and Maria Simms is an Italian-American. In the summer of 1999, the Simms family purchased a home in Milford next door to the defendants. Within a month of moving into their home, the plaintiffs were repeatedly threatened and harassed by the defendants because of the plaintiffs' race. The threats and harassment did not end until the defendants moved away in the spring of 2000.

The plaintiffs brought this civil action against the defendants alleging the following three claims: intimidation based on bigotry and bias in violation of § 52-571c, intentional infliction of emotional distress, and negligent infliction of emotional distress. After the trial, the jury, on the count arising under § 52-571c, returned a verdict for Tarvis Simms against Wilfred Chaisson only and for Johnson against Michelle Chaisson only, and awarded each nominal damages of $10.[3]

---

[2] The present action was originally brought by three plaintiffs: Tarvis Simms, Johnson and Denise Crosley. Because Johnson and Crosley are minors, this action was brought on their behalf by Maria Simms and Tarvis Simms, respectively. Prior to submitting the case to the jury, the court directed a verdict against Crosley on all counts. That aspect of the case is not before us in this appeal. Accordingly, Tarvis Simms and Johnson are the only remaining plaintiffs.

[3] On the negligent infliction of emotional distress count, the jury found for Tarvis Simms against Wilfred Chaisson only and awarded him $3000 in damages. On the same count, the jury also found for Johnson and awarded him $2000 against Wilfred Chaisson and $6000 against Michelle Chaisson. On the intentional infliction of emotional distress count, the jury found for Tarvis Simms against Wilfred Chaisson only and for Johnson against Michelle

Thereafter, the plaintiffs filed an application for an award of attorney's fees pursuant to § 52-571c (b).[4] In determining whether to exercise its discretion and award the plaintiffs attorney's fees, the trial court recounted the following facts: "The evidence established that within a month after the Simms family moved next door to the [defendants] in Milford . . . the plaintiffs were subjected to persistent threats and harassment because of their race. The [defendants'] reprehensible conduct included specific threats from Wilfred [Chaisson] to Tarvis Simms that [he] would blow up [Tarvis] Simms and his house, threats to kill the Simms' dog, almost daily racial slurs especially from Michelle [Chaisson] to . . . Johnson and [Crosley], obscene gestures directed at Johnson and [Crosley], the illuminated display of a confederate flag and the display of a 'black face' mask, at which members of the [defendants'] family threw darts, on [their] property, and repeated threats, including threats to kill members of the Simms family. A neighbor who lived across the street from the Simms and Chaisson households recalled at least two occasions when Michelle [Chaisson] positioned herself outside the Simms' home in a threatening manner and loudly directed racial slurs against [Maria] Simms, Johnson and [Crosley]. Although the police responded on numerous occasions, the [defendants] remained undeterred. Furthermore, the [defendants] not only failed to express any remorse for their extreme and outrageous behavior, but they denied engaging in threats, intimidation and harassment and sought to blame the Simms family for what they per-

Chaisson only, and in both instances awarded nominal damages of $10. Neither of these counts is at issue in this appeal.

[4] Alternatively, the plaintiffs sought attorney's fees as an award of common-law punitive damages under their successful claim of intentional infliction of emotional distress. The trial court declined, however, to base its award of attorney's fees on common-law punitive damages. On appeal, the plaintiffs do not assert this claim as an alternative ground for affirmance.

sisted to characterize as 'arguments' over a driveway easement. The jury, however, rejected their defense and determined that both Wilfred [Chaisson] and Michelle [Chaisson] acted maliciously and with specific intent to intimidate and harass the plaintiffs because of the plaintiffs' race."

In its legal analysis of § 52-571c (b), the trial court rejected the defendants' argument that, under the United States Supreme Court's decision in *Farrar* v. *Hobby*, 506 U.S. 103, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992), the determinative factor in calculating a reasonable attorney's fee is the degree to which the plaintiffs succeeded in obtaining the monetary relief that they sought. The trial court determined that an award of a reasonable attorney's fees was proper in the present case because the plaintiffs' action vindicated a significant legal interest and accomplished a public policy goal of § 52-571c. In addition, the trial court determined that the factors enumerated in rule 1.5 (a) of the Rules of Professional Conduct supported a substantial attorney's fee award. The trial court reduced the plaintiffs' requested fee by 20 percent, to $65,286.80, because it determined that the plaintiffs' employment of two attorneys had resulted in some redundancy in the work performed. This appeal followed.[5]

On appeal, the defendants argue that the trial court abused its discretion by failing to apply *Farrar* v. *Hobby*, supra, 506 U.S. 103, and subsequent federal court decisions, in which federal courts have refused to award attorney's fees or awarded only nominal fees under federal fee shifting statutes when the plaintiff had recovered only nominal damages. Although the defendants concede that this federal authority is not binding with

---

[5] The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

regard to the interpretation of § 52-571c (b), they claim that the trial court should have accorded greater weight to this line of precedent because of the federal courts' wealth of experience in applying federal fee shifting statutes.

In response, the plaintiffs argue that the trial court properly determined that *Farrar* does not prevent it from exercising its discretion to award substantial attorney's fees in the present case. First, the plaintiffs note that, because the court in *Farrar* was limiting the discretion of courts to award attorney's fees under a federal statute, it is not binding on a state court exercising its discretion under a state statute. Second, the plaintiffs argue that the opinion in *Farrar* did not command a majority for the proposition that the only reasonable attorney's fee award for a plaintiff receiving nominal damages is usually no fee award. Finally, the plaintiffs contend that § 52-571c (b) is not linked in any way to 42 U.S.C. § 1988,[6] the fee shifting statute at issue in *Farrar*. Rather, the plaintiffs point out that numerous federal courts have followed Justice O'Connor's concurrence in *Farrar* and have awarded attorney's fees when the plaintiff, although receiving only nominal damages, has prevailed on a significant legal issue or accomplished a public goal. See *Farrar* v. *Hobby*, supra, 506 U.S. 121–22. The plaintiffs further contend that the facts of the present case justify an award of attorney's fees under the standard articulated by Justice O'Connor in her concurrence in *Farrar*.[7] We agree with the plaintiffs that the trial court did not abuse its discretion in award-

[6] Section 1988 (b) of title 42 of the United States Code provides in relevant part: "In any action or proceeding to enforce a provision of [various civil rights laws] the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ."

[7] The plaintiffs also argue that the legislative history of § 52-571c does not support applying *Farrar*'s allegedly narrow view of when a court may award attorney's fees to a prevailing party that recovered only nominal damages.

ing the plaintiffs substantial attorney's fees under § 52-571c (b).

"It is well established that we review the trial court's decision to award attorney's fees for abuse of discretion. . . . This standard applies to the amount of fees awarded . . . and also to the trial court's determination of the factual predicate justifying the award. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 252–53, 828 A.2d 64 (2003).

Section 52-571c (b) provides that: "In any civil action brought under this section in which the plaintiff prevails, the court shall award treble damages and may, in its discretion, award equitable relief and a reasonable attorney's fee." The defendants conceded before the trial court that the plaintiffs have prevailed in this suit. This concession was appropriate because we previously have defined a prevailing party as "[a] party in whose favor a judgment is rendered, *regardless of the amount of damages awarded* . . . ." (Emphasis added; internal quotation marks omitted.) *Wallerstein* v. *Stew Leonard's Dairy*, 258 Conn. 299, 303, 780 A.2d 916 (2001), quoting Black's Law Dictionary (7th Ed. 1999); see also *Russell* v. *Russell*, 91 Conn. App. 619, 631, 882 A.2d 98 (if party "obtains judgment on even a fraction of the claims advanced, or is awarded only nominal damages, the party may nevertheless be regarded as the 'prevailing party' "), cert. denied, 276 Conn. 924, 925, 888 A.2d 92 (2005). Further, the Supreme Court in *Farrar*, on which the defendants rely so heavily, concluded that a

party recovering only nominal damages is nevertheless, a prevailing party under 42 U.S.C. § 1988.[8] *Farrar* v. *Hobby*, supra, 506 U.S. 112.

The defendants do not challenge any specific aspect of the trial court's calculation of the attorney's fee award. Nor do the defendants challenge the trial court's factual determinations that led it to exercise its discretion and award substantial attorney's fees. Rather, the only way in which the defendants claim that the trial court abused its discretion is in failing to apply *Farrar* in determining whether a substantial attorney's fee award would be reasonable. We conclude that the trial court properly determined that the *Farrar* court's primary focus on the extent of a plaintiff's monetary recovery was not a determinative factor in the exercise of its discretion under § 52-571c (b). Moreover, we further conclude that the trial court considered all the factors enumerated in the majority opinion in *Farrar*; id., 114–15; and in Justice O'Connor's concurrence; id., 121–22; and reasonably determined that they support a substantial attorney's fee award in the present case.

We begin with an analysis of the United States Supreme Court's decision in *Farrar*. In that case, the court reviewed the propriety of an award to a plaintiff of $280,000 in attorney's fees under 42 U.S.C. § 1988 when the plaintiff had sought $17 million in damages

---

[8] Accordingly, the defendants' contention that the trial court should have been guided by *Farrar* because § 52-571c was enacted three years after *Farrar* was decided and employs language similar to that used in § 1988, is misplaced. Specifically, the defendants point to the language granting the trial court discretion to award attorney's fees under § 52-571c (b) in a case "in which the plaintiff prevails," and the similar language in § 1988 granting the trial court discretion to award fees to "the prevailing party." Because the court in *Farrar* v. *Hobby*, supra, 506 U.S. 112, recognized that a party recovering nominal damages is a prevailing party, the defendants' reliance on the similarity of the language between the statutes undermines, rather than bolsters, their argument that the plaintiffs in the present case are not entitled to an attorney's fee award.

in an action brought under 42 U.S.C. § 1983, but was awarded only $1 in nominal damages. Id., 106–107. On the lone question presented in the petition for certiorari, the court held that a party recovering only nominal damages was a prevailing party under § 1988. Id., 112; id., 122–23 (White, J., concurring and dissenting) (agreeing with majority regarding prevailing party issue, but noting that question of reasonableness of amount of fee award was not presented in petition for certiorari or briefed by petitioners). Nevertheless, the court went on to determine that the District Court abused its discretion in awarding the plaintiff $280,000 in attorney's fees because it failed to consider the extent of the plaintiff's recovery of the monetary damages that he had sought. Id., 114–15. The Supreme Court reasoned that the degree of the plaintiff's success must be considered in determining the reasonableness of a fee award. Id., 114. In measuring the plaintiff's success in his § 1983 action, the court gave primary consideration to the difference between the amount of damages sought and the amount actually obtained because "the basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights." (Internal quotation marks omitted.) Id., 112; see also id., 114. Accordingly, the court determined that, because the plaintiff recovered only nominal damages despite having sought $17 million in compensatory damages, the only reasonable fee would be no fee at all. Id., 114–16.

Justice O'Connor, who provided the majority with the fifth vote in *Farrar*, agreed, in her concurrence, that "when the plaintiff's success is purely technical or de minimis, no fees can be awarded." Id., 117. She further reasoned, however, that, in addition to the difference between the amount recovered and the damages sought, two more factors must be considered to determine if the plaintiff's victory was de minimis: (1)

the significance of the legal issue on which the plaintiff prevailed; and (2) whether the plaintiff's suit accomplished some public goal. Id., 121–22 (O'Connor, J., concurring). She concluded, however, that, on the facts of *Farrar*, neither of those factors supported a determination that the plaintiff's victory was more than de minimis, and, thus, she agreed that the only appropriate attorney's fee in that case was no fee. Id., 122.

Turning to the present case, we note at the outset that the defendants misconstrue *Farrar* because it does not establish a firm rule that the only appropriate fee is no fee when the prevailing party recovers nominal damages and did not create a per se bar against awarding attorney's fees to a prevailing party who recovers only nominal damages.[9] See id., 115 (when prevailing party recovers only nominal damages, "the only reasonable fee is *usually* no fee at all" [emphasis added]); see also id., 121 (O'Connor, J., concurring). Rather, the Supreme Court noted that the primary consideration in awarding fees under 42 U.S.C. § 1988 was a comparison of the amount of damages awarded with the amount sought. Id., 114. Thus, the court's conclusion would allow for a substantial award of fees where the damages sought and the recovery were roughly corresponding in amount, including where both were minimal in size. See *Hyde* v. *Small*, 123 F.3d 583, 585 (7th Cir. 1997) ("[w]hen the civil rights plaintiff aims small, and obtains an amount that is significant in relation to that aim [it need not reach the target], he is prima facie entitled to an award of fees"); see also *Brandau* v. *Kansas*, 168 F.3d 1179, 1180–83 (10th Cir.) (affirming substantial fee award because, in part, difference between damages

---

[9] The defendants seem to concede grudgingly, at a later point in their brief to this court, that *Farrar* does not stand for an absolute bar on the award of fees because they state that they are not "argu[ing] that there are never any circumstances under which a statutory attorney['s] fee might properly be awarded in the absence of an award of compensatory damages."

sought and nominal damages recovery was not as severe as in *Farrar*), cert. denied, 526 U.S. 1133, 119 S. Ct. 1808, 143 L. Ed. 2d 1012 (1999). Moreover, Justice O'Connor's consideration, in her concurrence, of both the significance of the legal issue and whether the suit accomplished a public goal also reveals that a nominal damages award does not necessarily equate to no attorney's fees award under § 1988. *Farrar* v. *Hobby*, supra, 506 U.S. 121–22; see also *Gudenkauf* v. *Stauffer Communications, Inc.*, 158 F.3d 1074, 1078–81 (10th Cir. 1998) (relying on additional factors discussed by Justice O'Connor in *Farrar* upholding award for attorney's fees where prevailing party did not recover compensatory damages); *Muhammad* v. *Lockhart*, 104 F.3d 1069, 1070 (8th Cir. 1997) (same); *Cabrera* v. *Jakabovitz*, 24 F.3d 372, 393 (2d Cir.) (same), cert. denied, 513 U.S. 876, 115 S. Ct. 205, 130 L. Ed. 2d 135 (1994).

Although *Farrar* does not prohibit the award of attorney's fees to a plaintiff recovering only nominal damages, it does narrow a court's discretion to award a substantial fee under § 1988. Nonetheless, *Farrar*'s requirement that courts, in exercising their discretion to award fees, give primary consideration to the amount of damages awarded as compared to the amount sought is of limited value in providing guidance to Connecticut courts in exercising their discretion to award attorney's fees under § 52-571c (b). First, *Farrar*'s narrow view of when an attorney's fee award to a prevailing party recovering nominal damages would be reasonable is of minimal persuasive value because the text of § 1988 has a crucial distinction from the language of § 52-571c (b). Under § 1988, a trial court may award the prevailing party "a reasonable attorney's fee as part of the costs . . . ." Thus, "when a court denies costs, it must deny fees as well . . . . And when Congress enacted § 1988, the courts would deny even a prevailing party costs under Federal Rule of Civil Procedure 54 (d) where the

victory was purely technical." *Farrar* v. *Hobby*, supra, 506 U.S. 119–20 (O'Connor, J., concurring). There is no equivalent restriction in the text of § 52-571c (b) that prohibits a trial court from exercising its discretion to award fees when the prevailing party's victory is "technical" in nature.

Second, measuring a plaintiff's success by focusing primarily on the extent of damages recovered is inappropriate in the context of § 52-571c. As we have noted previously herein, *Farrar* gave primary consideration to the extent of the prevailing party's recovery because "the basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights." (Internal quotation marks omitted.) Id., 112; see also id., 114 ("[w]here recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought" [internal quotation marks omitted]). In contrast, providing a means of compensation is not the sole purpose of § 52-571c because it provides a civil remedy for many injuries that already were compensable in tort in this state. At the time of the conduct at issue in the present case, General Statutes (Rev. to 1999) § 52-571c (a)[10] provided a civil remedy for "[a]ny person injured in person or property as a result of an act that constitutes a violation of section 53a-181b . . . ." A person violates General Statutes (Rev. to 1999) § 53a-181b (a) if he or she "maliciously, and with specific intent to intimidate or harass another person because of such other person's race, religion, ethnicity or sexual orientation, does any

---

[10] Section 52-571c (a) was amended in 2000 by the substitution of the statutory references regarding intimidation based on bigotry and bias, after that crime was recodified. See Public Acts 2000, No. 00-72, § 9 (replacing reference to "section 53a-181b" with "section 53a-181j, 53a-181k or 53a-181*l*"). The technical change is not relevant to this appeal.

of the following: (1) Causes physical contact with such other person; (2) damages, destroys or defaces any real or personal property of such other person; or (3) threatens, by word or act, to do an act described in subdivision (1) or (2), if there is reasonable cause to believe that an act described in subdivision (1) or (2) will occur." Many of the injuries for which § 52-571c (a) provides a civil remedy also would be compensable under various tort theories, such as assault, battery, conversion, and trespass to chattels. See *Falker* v. *Samperi*, 190 Conn. 412, 419, 461 A.2d 681 (1983) (defining conversion as "unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights" [internal quotation marks omitted]); 1 Restatement (Second), Torts § 13 (1965) (liability for battery arises "if [a] [a person] acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and [b] a harmful contact with the person of the other directly or indirectly results"); 1 Restatement (Second), supra, § 21 (liability for assault arises "if [a] [a person] acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and [b] the other is thereby put in such imminent apprehension"); 1 Restatement (Second), supra, § 217 (defines trespass to chattels as "intentionally [a] dispossessing another of the chattel, or [b] using or intermeddling with a chattel in the possession of another"); 1 Restatement (Second), supra, § 218 (b) (liability for trespass to chattel includes, but is not limited to, chattel's impairment "as to its condition, quality, or value"). Thus, the success of a prevailing party under § 52-571c should not be measured primarily by the extent of her recovery. See *Gudenkauf* v. *Stauffer Communications, Inc.*, supra, 158 F.3d 1078–81 (degree of monetary recovery not considered in calculating rea-

sonable attorney's fee award in mixed motive Title VII discrimination case because governing statute's purpose is broader than just providing compensation for injuries).

Finally, *Farrar* is not binding on a Connecticut court exercising its discretion to award attorney's fees under a state statute. See *General Accident Ins. Co.* v. *Wheeler*, 221 Conn. 206, 212, 603 A.2d 385 (1992) (noting that federal court's interpretation of Connecticut statute is not binding on this court); *State* v. *Godek*, 182 Conn. 353, 359, 438 A.2d 114 (1980) (stating that this court is not required to follow cases construing federal rules of civil procedure in interpreting similar Practice Book rule), cert. denied, 450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981).

We conclude that the trial court in the present case, in its well reasoned opinion, considered all the appropriate factors relative to an award of attorney's fees, including the extent of the plaintiffs' recovery. Connecticut courts traditionally examine the factors enumerated in rule 1.5 (a) of the Rules of Professional Conduct[11] in calculating a reasonable attorney's fee award. See, e.g., *Schoonmaker* v. *Lawrence Brunoli, Inc.*, supra, 265 Conn. 259; *Sorrentino* v. *All Seasons Services, Inc.*, 245 Conn. 756, 775, 717 A.2d 150 (1998). As part of its

---

[11] Rule 1.5 (a) of the Rules of Professional Conduct provides: "A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2) The likelihood, if made known to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3) The fee customarily charged in the locality for similar legal services;

"(4) The amount involved and the results obtained;

"(5) The time limitations imposed by the client or by the circumstances;

"(6) The nature and length of the professional relationship with the client;

"(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) Whether the fee is fixed or contingent."

examination of these factors, the trial court specifically considered "[t]he amount involved and the results obtained" and noted that "[t]his case did not involve a claim for a large amount of economic and noneconomic damages." Thus, it does not appear that in the present case "the plaintiff was aiming high and fell far short . . . in the process inflicting heavy costs on his opponent and wasting the time of the court, [rather it appears that] . . . the case was simply a small claim and was tried accordingly . . . ."[12] (Citations omitted.) *Hyde* v. *Small*, supra, 123 F.3d 585; see also *Brandau* v. *Kansas*, supra, 168 F.3d 1180–83 (affirming attorney's fee award of $41,598.13 when plaintiff sought back pay for twenty-one months and $50,000 in noneconomic damages, but recovered only $1); *Jones* v. *Lockhart*, 29 F.3d 422, 424 (8th Cir. 1994) (court noted, in awarding $10,000 in attorney's fees, that discrepancy between award sought, $860,000, and amount recovered, $2, "pales in comparison to discrepancy presented in *Farrar*"); *Ermine* v. *Spokane*, 143 Wash. 2d 636, 640–41, 646, 23 P.2d 492 (court observed, in affirming substantial attorney's fee award, that difference between amount plaintiff sought, approximately $6000, and amount obtained, $1, was modest in comparison to difference in *Farrar*), cert. denied sub nom. *Barrington* v. *Ermine*, 534 U.S. 994, 122 S. Ct. 461, 151 L. Ed. 2d 378 (2001); cf. *Farrar* v. *Hobby*, supra, 506 U.S. 114–16 (abuse of discretion to award reasonable attorney's fees where plaintiff sought $17 million in damages and obtained $1); *Pino* v. *Locas-*

---

[12] We note that the present case was initiated by the plaintiffs in a complaint dated December 6, 2001, and the ruling that is the subject of this appeal was filed on November 5, 2004. In contrast, Justice O'Connor noted in her concurrence in *Farrar* that the litigation resulting in the plaintiff's nominal damages award in that case was drawn out over a ten year period and encompassed two appeals. *Farrar* v. *Hobby*, supra, 506 U.S. 116; see also *Brandau* v. *Kansas*, supra, 168 F.3d 1182 and n.2 (court noted, in affirming substantial attorney's fee award, that, unlike *Farrar*, case was not subject of protracted litigation as order that was on appeal was issued one year from case's inception).

*cio*, 101 F.3d 235, 238–39 (2d Cir. 1996) (rejecting attorney's fee award where plaintiff sought $21 million and obtained only $1).

We further determine that there is a strong public policy reason for giving courts discretion to award substantial attorney's fees when the plaintiff's claim for damages and recovery is not large. Courts have recognized that the cumulative impact of small violations of one's civil rights may not be minimal to society as a whole. See *Hyde* v. *Small*, supra, 123 F.3d 585 ("the cumulative effect of petty violations of the [c]onstitution arising out of the interactions between the police . . . and the citizenry on the values protected by the [c]onstitution may not be petty, and if this is right then the mere fact that a suit does not result in a large award of damages or the breaking of new constitutional ground is not a good ground for refusing to award any attorneys' fees"). Thus, the recovery of attorney's fees is appropriate as an incentive for attorneys to represent such litigants. See id.; *O'Connor* v. *Huard*, 117 F.3d 13, 18 (1st Cir. 1997) (recognizing need to provide "incentive to attorneys to represent litigants . . . who seek to vindicate constitutional rights but whose claim may not result in substantial monetary compensation"). In the present case, the trial court also correctly recognized that an award of a substantial attorney's fee was supported by "the need to provide an incentive to counsel to represent victims of hate crimes who seek to bring civil lawsuits to vindicate themselves but whose claims may not be supported by special damages that would lead to substantial monetary compensation . . . ."

Moreover, the trial court reasonably concluded that the additional factors that Justice O'Connor discussed in her concurrence in *Farrar* v. *Hobby*, supra, 506 U.S. 120–21, also supported a substantial fee award in the present case. First, the trial court concluded that the

plaintiffs prevailed on a significant legal issue as they vindicated their civil right "to live in the place of one's choice without racial harassment and intimidation. . . . For the Simms family, which consisted of a mixed race couple and their two African-American children, their ability to peacefully enjoy the first home they had ever owned was shattered by persistent threats and harassment from their neighbors, the [defendants], motivated by racial animus." The trial court also determined that the plaintiffs prevailed on a significant legal issue because the defendants' underlying conduct "present[ed] the paradigm of outrageous racially motivated conduct which . . . § 52-571c sought to redress."

The trial court reasonably concluded that the plaintiffs, in the present case, prevailed on significant legal issues. In her concurring opinion in *Farrar*, Justice O'Connor recognized that a plaintiff may succeed on a significant issue by establishing the defendant's liability. *Farrar* v. *Hobby*, supra, 506 U.S. 121. In that case, however, Justice O'Connor noted that the plaintiff established liability as to only one of the six defendants. Id. In contrast, in the present case, each of the plaintiffs established that one of the two defendants were liable for violating § 52-571c. Second, as the trial court's recitation of the facts underpinning its decision reveal, the plaintiffs established that the defendants' acts in violation of § 52-571c were egregious and reprehensible in nature. See *Sheppard* v. *Riverview Nursing Center, Inc.*, 88 F.3d 1332, 1336 (4th Cir.) (examining egregiousness of defendant's underlying conduct in determining proportionality of attorney's fee award to plaintiff's success under *Farrar* in mixed motive Title VII discrimination case), cert. denied, 519 U.S. 993, 117 S. Ct. 483, 136 L. Ed. 2d 377 (1996). Finally, the defendants' acts in violation of § 52-571c occurred in and around the plaintiffs' home. Success on this issue was not a minor victory because, as we have stated in other

contexts, "[t]he sanctity of the home has a well established place in our jurisprudence." (Internal quotation marks omitted.) *State* v. *Eady*, 249 Conn. 431, 455, 733 A.2d 112, cert. denied, 528 U.S. 1030, 120 S. Ct. 551, 145 L. Ed. 2d 428 (1999).

In addition to prevailing on a significant legal issue, the trial court reasonably determined that the plaintiffs' successful action accomplished a public policy goal: "[T]he general deterrence of acts of intimidation and harassment based on bias or bigotry . . . ." Numerous courts have concluded that, in the context of civil rights litigation, deterring unlawful acts or violations of individuals' rights is a public policy goal that supports the award of substantial attorney's fees. See *Gudenkauf* v. *Stauffer Communications, Inc.*, supra, 158 F.3d 1080–81 (public purpose accomplished by plaintiff's Title VII action, even though only nominal damages recovered, because judgment helps assure that workplace will be free of unlawful discrimination); *O'Connor* v. *Huard*, supra, 117 F.3d 18 (affirming attorney's fee award to plaintiff recovering only nominal damages because, in part, it will deter "future abuses of the rights of pretrial detainees" [internal quotation marks omitted]); *Muhammad* v. *Lockhart*, supra, 104 F.3d 1070 (noting that jury's verdict that defendant had either violated plaintiff's procedural due process right or right to be free from cruel and unusual punishment accomplished public goal by "encouraging governments scrupulously to perform their constitutional duties"); *Cabrera* v. *Jakabovitz*, supra, 24 F.3d 393 (affirming attorney's fee award to plaintiff recovering only nominal damages because, in part, plaintiff's action will warn "landlords that the law will not tolerate their use of [real estate] brokers who discriminate invidiously").

We therefore conclude that the trial court in the present case did not abuse its discretion in awarding the plaintiffs substantial attorney's fees under § 52-571c (b).

The judgment is affirmed.

In this opinion the other justices concurred.