COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES ET AL. *v.* BROOK-STONE COURT, LLC, ET AL.
(AC 28221)

McLachlan, Gruendel and Pellegrino, Js.

Argued January 16—officially released April 29, 2008

*Robert J. Kor*, for the appellant (plaintiff Kathy Sanchez).

*Elizabeth LaCombe*, certified intern, with whom was *Jennifer S. Allison*, for the appellees (defendants).

*Charles Krich*, principal attorney, for the appellee (named plaintiff).

*Opinion*

McLACHLAN, J. This case stems from an underlying civil rights case brought by the commission on human rights and opportunities (commission) on the behalf of the plaintiffs Kathy Sanchez and Rebekah Westphal against the defendants, which include Brookstone Court, LLC.[1] On appeal, the plaintiff challenges the trial court's calculation of her award for attorney's fees. Specifically, the plaintiff claims that the court improperly calculated the amount of her award of attorney's fees (1) when it reduced the lodestar[2] amount of $52,699 to a fee award of $21,700, (2) when it reduced the lodestar amount of $52,699 by more than 50 percent without finding that any of the hours spent on the case were unjustified, (3) because the court had awarded her only $10,000 in damages when she sought more

[1] Westphal is not a party to the present appeal. Therefore, for the purposes of this appeal, we refer to Sanchez as the plaintiff. In their original complaint to the commission, the plaintiff and Westphal named only Brookstone Court, LLC. On October 12, 2000, however, the parties amended their complaint to include Harvest Investments, LLC, the managing company; Roger Beit, principal member of Brookstone Court, LLC; Laura Ross, property manager; and Laura Hull, leasing agent.

[2] The "lodestar" component of an attorney's fee is the product of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley* v. *Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

than $175,000 in damages, (4) because she had a contingent fee agreement with her attorney, and (5) because the court established the lodestar amount at $52,699 on the basis of 162 hours and not $55,025.75 on the basis of 169.31 hours. We affirm the judgment of the trial court.

The following facts are relevant to the resolution of the plaintiff's appeal. In June, 1999, the plaintiff and Westphal read an advertisement for Brookstone Court Apartments.[3] Interested in renting an apartment, Westphal, with the plaintiff in close proximity, called the apartment management to see if any apartments were available. After speaking with a representative of the apartment complex, the plaintiff and Westphal learned that even though there were apartments available, it would not be possible for the plaintiff to live there because she required a wheelchair for mobility.

Subsequently, in December, 2000, the plaintiff and Westphal initiated a civil rights claim against the defendants before the commission. The commission investigated the claim and held a hearing in which attorney Robert J. Kor presented the plaintiff's and Westphal's cases. On the basis of this investigation and hearing, the commission found reasonable cause that a discriminatory practice had occurred. On December 11, 2000, the defendants elected to have the commission bring a civil action in Superior Court, pursuant to General Statutes §§ 46a-83 (d) and 46a-84.[4] The commission, in

---

[3] Brookstone Court Apartments, owned by the defendant Brookstone Court, LLC, is located at 147 Hillcrest Avenue, West Hartford.

[4] As an alternative to bringing an action in the Superior Court, the defendants could have elected to have the commission conduct an administrative hearing on the matter.

General Statutes § 46a-83 (d) (2) provides in relevant part: "If the investigator makes a determination that there is reasonable cause to believe that a violation of section 46a-64c has occurred, the complainant and the respondent shall have twenty days from receipt of notice of the reasonable cause finding to elect a civil action in lieu of an administrative hearing pursuant to section 46a-84. If either the complainant or the respondent requests a civil action, the commission, through the Attorney General or a commission

its complaint against the defendants, alleged that the plaintiff and Westphal were discriminated against when the defendants "refus[ed] to rent, negotiate to rent, and [failed] to provide reasonable accommodations, because of the [plaintiff's] physical disabilities . . . ." (Citations omitted.) On February 15, 2006, in its memorandum of decision in the civil rights action, the court found in favor of the plaintiff. Thereafter, in its memorandum of decision on the plaintiff's motion for attorney's fees, the court iterated its findings by stating that the "defendants violated General Statutes § 46a-64c (a) (6) (A)[5] and (C),[6] and the federal Fair Housing Act, § 42 U.S.C. § 3604 (f) (1) and (3) (A) and (B)."[7] Thereafter,

legal counsel, shall commence an action pursuant to subsection (b) of section 46a-89 within ninety days of receipt of the complainant's or the respondent's notice of election of a civil action. . . ."

[5] General Statutes § 46a-64c (a) (6) (A) provides in relevant part that it is a discriminatory practice: "To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a learning disability or physical or mental disability of: (i) Such buyer or renter; (ii) a person residing in or intending to reside in such dwelling after it is so sold, rented, or made available; or (iii) any person associated with such buyer or renter."

[6] General Statutes § 46a-64c (a) (6) (C) provides in relevant part: "For purposes of this subdivision, discrimination includes: (i) A refusal to permit, at the expense of a person with a physical or mental disability, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises . . . ."

[7] Section 3604 (f) of title 42 of the United States Code provides in relevant part that it is unlawful: "(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—

"(A) that buyer or renter,

"(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

"(C) any person associated with that buyer or renter. . . .

"(3) For purposes of this subsection, discrimination includes—

"(A) a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted.

the court awarded the plaintiff $10,000, imposed a civil penalty in favor of the state of $1000 and rendered judgment against Westphal. After reargument, on March 23, 2006, the court corrected its decision and found in favor of Westphal, awarding her $1 in damages.

On March 3, 2006, Kor moved for attorney's fees for his work in the underlying case. The court examined General Statutes § 46a-104[8] and 42 U.S.C. § 3613 (c) (2)[9] of the Fair Housing Act to determine the amount

"(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling; or

"(C) in connection with the design and construction of covered multifamily dwellings for first occupancy after the date that is 30 months after [the date of enactment of the Fair Housing Amendments Act of 1988, enacted September 13, 1988], a failure to design and construct those dwellings in such a manner that—

"(i) the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;

"(ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and

"(iii) all premises within such dwellings contain the following features of adaptive design:

"(I) an accessible route into and through the dwelling . . . ."

[8] General Statutes § 46a-104 provides: "The court may grant a complainant in an action brought in accordance with section 46a-100 such legal and equitable relief which it deems appropriate including, but not limited to, temporary or permanent injunctive relief, attorney's fees and court costs."

General Statutes § 46a-100 provides in relevant part: "Any person who has timely filed a complaint with the [c]ommission . . . in accordance with section 46a-82 and who has obtained a release from the commission in accordance with section 46a-83a or 46a-101, may also bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the respondent transacts business, except any action involving a state agency or official may be brought in the superior court for the judicial district of Hartford."

In this case, the plaintiff did not obtain a release from the commission; thus, § 46a-104 does not apply. Rather, General Statutes § 46a-86 (c) applies, which provides in relevant part: "In addition to any other action taken hereunder, upon a finding of a discriminatory practice prohibited by section 46a-58, 46a-59, 46a-64, 46a-64c, 46a-81b, 46a-81d or 46a-81e, the presiding officer shall determine the damage suffered by the complainant, which damage shall include, but not be limited to, the expense incurred by the complainant for obtaining alternate housing or space, storage of goods and effects, moving costs and other costs actually incurred by him as a result

of attorney's fees to be awarded. The court adopted the "reasonable" attorney's fee standard and calculated the lodestar figure. The court found that Kor's hourly rate was $325 and that the amount of time he spent on the case was 162 hours, which resulted in the lodestar figure of $52,699.[10] The court considered factors such as success of the claims, the novelty and difficulty of the question, the skill requisite to perform the legal services properly, the experience, reputation and ability of the attorney and whether the fees were fixed or contingent. The court found that "[t]aking into account all of the circumstances of this case, and all of the factors stated [previously]," the reasonable attorney's fees for Kor's work was $25,000. The court, however, reduced this figure to $21,700 because Kor had a contingent fee arrangement with the plaintiff.[11]

of such discriminatory practice and *shall allow reasonable attorney's fees* and costs." (Emphasis added.)

Even though the court relied on § 46a-104, when it should have relied on § 46a-86 (c), the result of this case does not change. The plaintiff, in her motion for attorney's fees, requested relief pursuant to General Statutes §§ 46a-86 (c) and 46a-104, and 42 U.S.C. § 3613 (c) (2). The court then referenced § 46a-104 in its analysis for the award of attorney's fees. Furthermore, the commission, in its brief, asserted that the court analyzed the attorney's fee request under the incorrect statute. The commission claimed that the main difference between these two statutes is that § 46a-86 (c) mandates the court to award reasonable attorney's fees. We need not address the differences in the construction of these statutes because we find that the court did calculate an award and, thus, whether it "shall" or "may" have done so is irrelevant. Thus, even though the court evaluated the claim under the wrong statute, we find that no harm resulted. See generally *Myers* v. *Hartford*, 84 Conn. App. 395, 400, 853 A.2d 621, cert. denied, 271 Conn. 927, 859 A.2d 582 (2004).

[9] Section 3613 (c) (2) of title 42 of the United States Code provides in relevant part: "In a civil action under subsection (a) of this section, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs. The United States shall be liable for such fees and costs to the same extent as a private person."

[10] On October 5, 2006, in her motion to reargue, the plaintiff claimed that Kor earned attorney's fees in the amount of $55,025.75 on the basis of 169.31 hours of work.

[11] The court calculated that on the basis of the plaintiff's recovery on the underlying claim, Kor was entitled to $3300 under the parties' contingent fee agreement.

Subsequently, on October 5, 2006, the plaintiff moved to reargue the court's award of attorney's fees. On October 26, 2006, the court denied the plaintiff's motion to reargue. In its memorandum of decision denying the plaintiff's motion to reargue, the court stated that it "considered all the factors relating to the award of counsel fees in th[e] case and properly exercised its discretion to allow the plaintiff's attorney a reasonable fee."

On November 13, 2007, the plaintiff filed an appeal with this court. In the interim, on March 1, 2007, the plaintiff moved for an articulation, requesting that the court clarify the factual and legal bases on which the court relied when it reduced the award by the $3300 contingent fee amount and on which it relied to calculate the lodestar amount using 162 hours, as opposed to the 169.31 hours claimed by the plaintiff. The court denied the plaintiff's motion for articulation on March 13, 2007.[12] This appeal followed.

On appeal, the plaintiff asserts five separate claims, previously recited, that essentially allege the same issue, namely, whether the court improperly determined the plaintiff's award for attorney's fees. These claims will be addressed together.

Our standard of review for a challenge to the award of attorney's fees is well settled: "[W]e review the trial court's decision to award attorney's fees for abuse of discretion. . . . This standard applies to the amount of fees awarded. . . . and also to the trial court's determination of the factual predicate justifying the award. . . . Under the abuse of discretion standard for review,

---

[12] Although the court denied the plaintiff's motion for articulation, it did state the following: "(1) The fee arrangement of attorney Kor with his client entitled him to one third of the $10,000 recovery; whether or not he got paid, it is irrelevant," and, "(2) [w]hether attorney Kor claimed $52,699 or $55,025.75 would not have changed the court's decision."

[w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 252–53, 828 A.2d 64 (2003).

I

As a threshold matter, the plaintiff and the commission contend that the court improperly applied the governing law on the issue of attorney's fees. Specifically, the plaintiff objects to the court's consideration of federal precedent for its award of attorney's fees. In opposition, the defendants contend that the court correctly applied the governing law because the court found that the defendants had violated both state and federal law, and it was appropriate for the court to turn to federal precedent in the present case. Moreover, the commission, in its brief, maintains that although the commission's petition did mention federal law, it was only to the extent that the federal law was enforced through state law.

In the present case, the court found that the defendants violated § 46a-64c (a) (6) (A) and (C) and the federal Fair Housing Act, 42 U.S.C. § 3604 (f) (1) and (3) (A) and (B). Our Supreme Court has stated: "[I]n addressing claims brought under both federal and state housing laws, we are guided by the cases interpreting federal fair housing laws; 42 U.S.C. §§ 3601 through 3631; despite differences between the state and federal statutes." (Internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Orange*, 256 Conn. 557, 591, 775 A.2d 284 (2001). Thus, the court correctly considered federal precedent in the present case.

## II

The plaintiff claims that the court improperly reduced her award of attorney's fees from the lodestar amount of $52,699 to $25,000.[13] The plaintiff maintains that the court improperly reduced this award (1) without finding that any of the 162 hours spent on the case were unjustified, (2) because the plaintiff was awarded only $10,000 rather than the $175,000 she sought in her posttrial brief and (3) when it calculated the lodestar amount on the basis of 162 hours rather than 169.31 hours worked on the case.[14] Essentially, these claims boil down to one issue: whether the court improperly determined the plaintiff's attorney's fee award.

The plaintiff and the commission assert that the court improperly calculated her attorney's fees award when it imprudently relied on *Farrar* v. *Hobby*, 506 U.S. 103, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992).[15] In *Farrar*, the

---

[13] Originally, the plaintiff moved for attorney's fees in the amount of $48,282. Then she filed a supplemental motion for attorney's fees, claiming $52,699.50 in fees, and filed a second supplemental motion for attorney's fees, claiming $55,025.75 in fees. The court determined the lodestar amount to be $52,669, apparently awarding the value of $325 an hour for 162 hours. On the basis of this lodestar figure, the court awarded $25,000 and further reduced it by $3300, the amount to which counsel was entitled from the contingent fee award. Thus, except when we refer to the reduction on the basis of the contingent fee setoff, we use the amount found by the court: $25,000.

[14] The plaintiff also argues that the court improperly reduced her award of attorney's fees because of her contingent fee agreement. The plaintiff does not offer any legal authority to support this contention. Furthermore, the plaintiff offers legal authority that discusses only whether a court can enhance the attorney's fees award when there is a contingent fee agreement. Therefore, the plaintiff has not demonstrated that the court abused its discretion in reducing the award by the contingent fee amount.

[15] In *Farrar*, the United States Supreme Court held that the plaintiff was not entitled to any attorney's fees when she was awarded nominal damages of $1. The court stated: "[W]hen a plaintiff's victory is purely technical or de minimis, a district court need not go through the usual complexities involved in calculating attorney's fees." *Farrar* v. *Hobby*, supra, 506 U.S. 117.

In addition to her legal arguments, the plaintiff also asserts a public policy argument, claiming that the court's decision will injure future civil rights plaintiffs by discouraging counsel to represent such clients. Although we

United States Supreme Court suggested that a plaintiff who seeks compensatory damages but receives no more than nominal damages is often a prevailing party who should receive no attorney's fees. Id., 115 ("[i]n a civil rights suit for damages . . . the awarding of nominal damages . . . highlights the plaintiff's failure to prove actual, compensable injury"). The plaintiff first argues that the court should not have considered the *Farrar* decision in determining its award of attorney's fees. According to the plaintiff, *Farrar* should not be considered in light of our recent Supreme Court case, *Simms* v. *Chaisson*, 277 Conn. 319, 890 A.2d 548 (2006), which holds that *Farrar* is not binding on a Connecticut court exercising its discretion to award attorney's fees pursuant to a state statute. Although this general statement of the case holds true, the plaintiff misconstrues the *Simms* court's discussion of *Farrar*.

The plaintiff maintains that the trial court substantially relied on *Farrar* when it reduced her award of attorney's fees. The court, in its memorandum of decision on the plaintiff's motion for attorney's fees, stated that *Farrar* permits a court to take into account other factors, such as the degree of successful recovery obtained. The court then engaged in an analysis of the other factors that are considered to determine a reasonable fee. In the court's memorandum of decision on the plaintiff's motion to reargue, the court did not mention to what extent it relied on *Farrar*, if at all. Rather, it simply distinguished *Farrar* from *Simms*.[16] Nonetheless, the plaintiff argues that these references to *Farrar*

recognize the importance of this argument, it does not comport with the fact that the attorney was awarded more than $21,000 for his work.

[16] In its memorandum of decision on the plaintiff's motion to reargue, the court rebuffed the plaintiff's introduction of the *Simms* case for the first time in her motion to reargue. The court relies on *Opoku* v. *Grant*, 63 Conn. App. 686, 778 A.2d 981 (2001), for the proposition that a party cannot introduce new cases in a motion to reargue just to have a second bite of the apple. The court in *Opoku* stated: "[T]he purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked,

indicate that the court relied on *Farrar* to reduce the award. Yet, it is unclear to what extent the court actually reduced the amount of the fee award from $52,699 to $25,000 on the basis of *Farrar* because the court stated that it considered all the relevant factors for the consideration of attorney's fees. Furthermore, in *Farrar*, the court did not award the plaintiff any attorney's fees because the plaintiff achieved only a de minimis victory in relation to each of "the relevant indicia of success—the extent of relief, the significance of the legal issue on which the plaintiff prevailed, and the public purpose served . . . ." *Farrar* v. *Hobby*, supra, 506 U.S. 122. Here, even though the plaintiff's award was substantially less than the amount sought, the court appropriately exercised its discretion and awarded fees in the amount of $25,000, and further reduced that figure by the contingent fee amount to $21,700.

Additionally, a thorough reading of *Simms* belies the plaintiff's contention that *Farrar* does not apply in the present case. In *Simms*, our Supreme Court was faced with the question of "whether the trial court abused its discretion in awarding substantial attorney's fees under General Statutes § 52-571c (b)[17] to plaintiffs who recovered only nominal damages." *Simms* v. *Chaisson*, supra, 277 Conn. 320. There, the trial court awarded the plaintiffs a substantial amount of attorney's fees over the defendant's objection and in light of the *Farrar* precedent. Id., 323. Although our Supreme Court held that *Farrar* was not controlling, it also explained that *Farrar* "does not establish a firm rule that the only

or that there has been a misapprehension of facts." Id., 692. Thus, *Simms* was properly introduced before the court through the plaintiff's motion to reargue. It, however, is distinguishable from the present case and therefore has no impact on the resolution of the plaintiff's claims.

[17] General Statutes § 52-571c (b) provides: "In any civil action brought under this section in which the plaintiff prevails, the court shall award treble damages and may, in its discretion, award equitable relief and a reasonable attorney's fee."

appropriate fee is no fee when the prevailing party recovers nominal damages and [does] not create a per se bar against awarding attorney's fees to a prevailing party who recovers only nominal damages." Id., 328. The court further explained that "the [United States] Supreme Court noted that the primary consideration in awarding fees under 42 U.S.C § 1988 was a comparison of the amount of damages awarded with the amount sought. . . . Thus, the court's conclusion would allow for a substantial award of fees where the damages sought and the recovery were roughly corresponding in amount, including where both were minimal in size." *Simms* v. *Chaisson*, supra, 328. Accordingly, the court concluded that although *Farrar* "does not prohibit the award of attorney's fees to a plaintiff recovering only nominal damages, it does [however] narrow a court's discretion to award a substantial fee under § 1988." Id., 329.

On the basis of our Supreme Court's discussion of *Farrar* in the *Simms* case, which is distinguishable from this case, and because the court in the present case was faced with both state law and federal law, *Farrar* is applicable to the present case. *Simms* is distinguishable from the present case because the court in *Simms* relied on § 52-571c (b), which is based on intimidation and bigotry, which are characterized as invidious discrimination. In the present case, the court relied on a different statute. Therefore, the plaintiff's argument that the court improperly relied on *Farrar* in light of *Simms*, fails. Additionally, from the record before us, it is unclear to what extent the court relied on *Farrar* when it determined the plaintiff's attorney's fees award.

Furthermore, the plaintiff argues that the court improperly reduced the lodestar figure by 50 percent and that it should have calculated the lodestar figure on the basis of 169.31 hours rather than the 162 hours

it applied in its calculations.[18] The plaintiff argues that "[i]n the absence of the trial court identifying any specific time spent in the litigation by [the] plaintiff['s] counsel as being unreasonable, the sweeping reduction of the 'lodestar' amount suggests that the trial court believed that only eighty hours of counsel's time was reasonable and that the 169 hours actually spent was somehow excessive for six years of litigation at both the commission and at the Superior Court."

There are two deficiencies with the plaintiff's argument. In the first instance, the plaintiff argues that the lodestar figure should be the beginning and the end of the inquiry. This is simply not true. "[T]he *initial estimate* of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. . . . The courts may then adjust this lodestar calculation by other factors." (Citation omitted; emphasis added; internal quotation marks omitted.) *Laudano* v. *New Haven*, 58 Conn. App. 819, 822–23, 755 A.2d 907 (2000); see *Blanchard* v. *Bergeron*, 489 U.S. 87, 93, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989); see also *Hensley* v. *Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). Here, the court properly listed the factors to be considered in awarding attorney's fees. Second, to the extent that the plaintiff argues that the court did not sufficiently explain the weight it gave to particular factors, we know of no law, nor has the plaintiff cited any, that requires the court to ascribe to any of the factors a particular weight. Furthermore, to the extent that the record is unclear, the plaintiff is responsible for providing the court with an adequate record.[19]

---

[18] The plaintiff is not challenging the use of the lodestar figure; rather, she is challenging how the court calculated the figure and the reasons for the reduction applied to that figure.

[19] The plaintiff is aware of the inadequate record when she writes in her brief that "[t]he trial court failed to explain why it appears to have given no consideration to the plaintiff's supplemental motion for attorney's fees, dated April 23, 2006, which sought an additional [seven and one-quarter] hours for a total of 169.31 hours."

"It is axiomatic that the appellant must provide this court with an adequate record for review. See Practice Book § 61-10." *Narumanchi* v. *DeStefano*, 89 Conn. App. 807, 815, 875 A.2d 71 (2005). "[W]here a party is dissatisfied with the trial court's response to a motion for articulation, he may, and indeed under appropriate circumstances he must, seek immediate appeal of the rectification memorandum to this court via the motion for review." (Internal quotation marks omitted.) *Highgate Condominium Assn.* v. *Watertown Fire District*, 210 Conn. 6, 21, 553 A.2d 1126 (1989).

Upon receiving the response to her motion for articulation, which the plaintiff considered inadequate, she could have filed a motion for review with this court, requesting that the trial court provide an explanation of its reasons for the fee award. See Practice Book §§ 66-5 and 66-7. The plaintiff is responsible for providing this court with an adequate record for review and has failed to do so. On the basis of the court's recitation of the factors it considered and the inadequate record, we must defer to the substantial discretion of the trial court. Because we cannot say that the court abused its discretion or improperly applied the law, we affirm the judgment of the court.

The judgment is affirmed.

In this opinion the other judges concurred.

---

The plaintiff argues that the court "must state the reasons for excluding those hours 'as specifically as possible.'" The plaintiff reads the court's decision as if it did not focus on the hours spent on the case but, instead, focused solely on the amount of the award obtained. The court did state, however, that it considered all of the relevant factors.

A reading of the court's memorandum of decision on the plaintiff's motion for attorney's fees, the court's memorandum of decision on the plaintiff's motion to reargue and the court's holographic notes written on the plaintiff's motion for articulation do not disclose or clarify the court's reasons for reducing the lodestar amount by half or why the court used 162 hours to calculate the lodestar amount rather than 169.31 hours. It is the responsibility of the plaintiff, however, to ensure that the record is adequate for review. Practice Book § 61-10.