# MAYRA RODRIGUEZ *v.* MICHAEL ANCONA
## (AC 24012)

Lavery, C. J., and Bishop and Hennessy, Js.

Argued January 5—officially released March 22, 2005

*Glenn T. Terk*, for the appellant-appellee (defendant).

*David A. Pels*, for the appellee-appellant (plaintiff).

*Opinion*

BISHOP, J. This case involves small sums and large principles. The plaintiff, Mayra Rodriguez, appeals the amount of damages and attorney's fees she was awarded by the trial court following its judgment that the defendant, Michael Ancona, wrongfully withheld a security deposit and illegally entered the tenancy then occupied by the plaintiff. On appeal, the plaintiff claims that the court improperly awarded her (1) damages, pursuant to General Statutes § 47a-18a,[1] amounting to only one month of the plaintiff's portion of the subsidized rent and (2) attorney's fees, pursuant to § 47a-18a, in the amount of 15 percent of the total award for damages. We agree with the plaintiff and reverse in part the judgment of the trial court.[2]

[1] General Statutes § 47a-18a provides: "If the landlord makes an entry prohibited by section 47a-16 or 47a-16a, or makes repeated demands for entry otherwise lawful but which have the effect of unreasonably harassing the tenant, the tenant may recover actual damages not less than an amount equal to one month's rent and reasonable attorney's fees. The tenant may also obtain injunctive relief to prevent the recurrence of the conduct or terminate the rental agreement."

[2] In her second claim, the plaintiff asks this court to award her attorney's fees, which she has incurred in this appeal. This we cannot do. It is rudimentary that the allowance of counsel fees is within the sound discretion of the trial court, not the Appellate Court. See *Torres* v. *Waterbury*, 30 Conn.

The following facts and procedural history are relevant to our review of this appeal. In September, 1996, the plaintiff, a recipient of a rent subsidy under the housing assistance program administered by the Department of Housing and Urban Development pursuant to section eight of the National Housing Act, as amended in 1974 and codified at 42 U.S.C. § 1437f (section eight),[3] entered into a lease with the defendant for an apartment located at 58 Bond Street in Hartford. The agreement with the housing authority set the total rent for the tenancy at $800 per month and the plaintiff's portion of the rent at $438 per month. Originally, the security deposit was set at $800. The parties, however, agreed to a deposit of $400, which was paid in four separate payments of $100 each.

On March 20, 2000, without any prior notice to the plaintiff, the defendant and several of his employees entered and photographed the inside of the premises. Although the plaintiff was not at home at the time, her brother, William Rodriguez, and her two children were in the apartment. After the defendant and his employees knocked at the door, the plaintiff's ten year old son, Jason Lopez, answered the door. Lopez testified that, when he opened the door, the defendant and his employees pushed open the door, entered the premises and quickly started taking pictures. They did not request or receive permission to enter, nor did the defendant ever claim that an emergency required them to enter the apartment. The plaintiff vacated the premises on or about April 28, 2000. The defendant never returned the security deposit to the plaintiff or any interest that was due on the deposit.

On June 6, 2000, the plaintiff brought an action against the defendant for illegal entry, failure to provide suffi-

App. 620, 626–27, 621 A.2d 764 (1993). The plaintiff's claim, therefore, is more appropriately directed to the trial court.

[3] The section eight program provides rent subsidies for low income persons.

cient heat, refusal to return the security deposit and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[4] On August 3, 2001, the defendant brought an action against the plaintiff for damages to the tenancy. The two cases were consolidated for trial.

On February 21, 2003, the court found in favor of the plaintiff in the amount of $1238. The court awarded the plaintiff $400, the amount of her security deposit, and doubled the damages, increasing the award to $800 pursuant to General Statutes § 47a-21 (d) (2) for the defendant's failure to return the security deposit on time. The court awarded the plaintiff accrued interest on the security deposit in the amount of $111.72. The court also awarded the plaintiff $438, her portion of one month's rent, because the defendant entered the demised premises without the consent of the plaintiff on March 20, 2000. The court also found no merit to the plaintiff's CUTPA claim and the defendant's claim for damages. The court held that the defendant had waived any claim regarding damages to the apartment in prior agreements and had failed to prove that the plaintiff had caused any damages after the date of the waiver.[5] The court initially did not award attorney's fees for the illegal entry. At a subsequent hearing on attorney's fees, however, the court awarded the plaintiff 15 percent of the recovery as attorney's fees.

The defendant appealed on March 12, 2003. The plaintiff cross appealed on March 20, 2003. On March 8, 2004, the defendant withdrew his appeal.

---

[4] At trial on February 14, 2003, the plaintiff withdrew the second count of her complaint regarding the failure to provide sufficient heat.

[5] On March 9, 2000, in a separate matter, the plaintiff brought an action against the defendant pursuant to General Statutes § 47a-14h. In an agreement dated March 28, 2000, and an agreement dated April 17, 2000, the defendant agreed to waive any damages claims against the plaintiff "as may currently exist." The court in the present matter took judicial notice of that prior action and those agreements between the parties.

## I

The plaintiff claims that § 47a-18a requires that damages for the defendant's illegal entry be based on the full rent due to the landlord and not merely the tenant's portion due under the parties' section eight lease. She maintains that capping a landlord's damages at the tenant's portion only creates an undeserved windfall for the landlord and decreases the incentive for a landlord of a section eight tenant to comply with the statutory obligations as compared to a landlord without a section eight tenant. On the basis of his review of the definitions of "contract rent" and "tenant rent" contained in the section eight lease, the defendant argues that one month's rent should be interpreted to mean solely the monthly rent paid by the tenant. We agree with the plaintiff.

We begin by setting forth the appropriate standard of review. The plaintiff's claim raises a question of statutory interpretation, over which our review is plenary. See *Bengtson* v. *Commissioner of Motor Vehicles*, 86 Conn. App. 51, 56, 859 A.2d 967 (2004). "Relevant legislation and precedent guide the process of statutory interpretation. [General Statutes § 1-2z] provides that, [t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *State* v. *Boyd*, 272 Conn. 72, 76, 861 A.2d 1155 (2004). In the present case, the plaintiff contends that the phrase "one month's rent" as used in § 47a-18a by itself is not clear and unambiguous. We agree with the plaintiff and conclude that the phrase one month's rent is equally capable of either of the interpretations advocated by the parties and is, there-

fore, ambiguous. We therefore are not limited to the text of § 47a-18a in determining its meaning. "When the meaning of the statute is not plain and unambiguous, we . . . look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter for [interpretative guidance]." (Internal quotation marks omitted.) Id.

We begin our analysis by reviewing the text of § 47a-18a, which specifies in relevant part that a tenant may recover from a landlord who makes an illegal entry in violation of General Statutes § 47a-16,[6] "actual damages not less than an amount equal to one month's rent and reasonable attorney's fees. . . ." Section 47a-18a does not provide a definition for the phrase "one month's rent." Unfortunately, the legislative history provides minimal illumination in resolving this issue. Because the legislative history is essentially inconclusive, we must turn to other methods of statutory construction.

In this instance, we find helpful the definition of the term "rent" that appears in General Statutes § 47a-1, a section containing definitions for chapter 830, the

---

[6] General Statutes § 47a-16 provides: "(a) A tenant shall not unreasonably withhold consent to the landlord to enter into the dwelling unit in order to inspect the premises, make necessary or agreed to repairs, alterations or improvements, supply necessary or agreed to services or exhibit the dwelling unit to prospective or actual purchasers, mortgagees, tenants, workmen or contractors.

"(b) A landlord may enter the dwelling unit without consent of the tenant in case of emergency.

"(c) A landlord shall not abuse the right of entry or use such right of entry to harass the tenant. The landlord shall give the tenant reasonable written or oral notice of his intent to enter and may enter only at reasonable times, except in case of emergency.

"(d) A landlord may not enter the dwelling unit without the consent of the tenant except (1) in case of emergency, (2) as permitted by section 47a-16a, (3) pursuant to a court order, or (4) if the tenant has abandoned or surrendered the premises."

chapter in which § 47a-18a is found, as well as several other sections of the Landlord Tenant Act. Section 47a-1 (h) defines the term "rent" as "all periodic payments to be made to the landlord under the rental agreement." "[C]ourts are bound to accept the legislative definition of terms in a statute . . . ." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Texas-Ohio Power, Inc.*, 243 Conn. 635, 653, 708 A.2d 202 (1998). Thus § 47a-1 (h) provides a legislative definition of the term "rent" equally applicable to all statutes within the same chapter, including § 47a-18a. Because the term "rent" is defined in § 47a-1 (h) as including all periodic payments made to a landlord, we understand the same term in § 47a-18a as including all rent payments made to the landlord, regardless of their source. Applying our reasoning to the case at hand, we look to the section eight agreement to determine *all* the periodic payments that were to be made to the landlord. According to the section eight agreement, the contract rent included the tenant's portion of the rent plus the housing authority's contribution and amounted to a total of $800. All periodic payments that were to be made to the landlord under the rental agreement, therefore, must be interpreted to total $800, not merely $438.

Additionally, we "will not interpret statutes in such a way that would reach a bizarre or absurd result." (Internal quotation marks omitted.) *State* v. *Boyd*, supra, 272 Conn. 79. A tenant's claims should not be weakened merely because he or she does not have sufficient income to pay the full rental value of the tenancy. "One month's rent" is merely the statutory standard for damages assessed against a landlord to deter him or her from illegally entering a tenant's apartment. Making damages dependent on the source of rent payments would cause unfair discrepancies in the amounts recovered by tenants. Under the defendant's and the court's interpretation of the term "rent," low

income tenants receiving subsidies would recover fewer damages simply because the impoverished have a greater need for rent subsidies. The result urged by the defendant and adopted by the court would have the effect of decreasing a landlord's incentive to comply with the statute's proscriptions when renting to substantially subsidized tenants. Because a subsidized tenant should enjoy the same right to privacy as a full paying tenant, damages awarded to a subsidized tenant for the violation of his or her privacy rights should have no correlation to the amount of rent actually paid by the tenant. This result gives a landlord an equal incentive not to violate a tenant's privacy rights, regardless of the tenant's economic status.

As the plaintiff rightly claims, in certain circumstances, a tenant could have the entire value of the rent subsidized by the federal government. Under the court's interpretation of "one month's rent," such a tenant who suffers an illegal entry would be entitled to no damages, absent attorney's fees, while a tenant who pays full rental value would be entitled to damages. We know of no public policy that would support such a result. More specifically, we find no language in the applicable statutory scheme that warrants the disparate treatment of tenants based on the amount of rent they actually pay. We therefore hold that the phrase "one month's rent" as utilized in § 47a-18a includes both the tenant's portion as well as the subsidized portion of the rent payments made to a landlord.

## II

The plaintiff next claims that the court applied the wrong standard in calculating the award of attorney's fees pursuant to § 47a-18a. She maintains that the court improperly awarded attorney's fees as 15 percent of the total damages awarded to her. We agree that the

court applied an improper standard for determining attorney's fees.

The following additional facts are relevant to our review of this issue. As noted, the court originally did not award attorney's fees for the illegal entry. On October 1, 2003, the court held a hearing on that issue and awarded $202.45 in attorney's fees to the plaintiff for the defendant's illegal entry into her apartment. On January 23, 2004, the plaintiff filed a motion for articulation requesting that the court clarify its decision regarding the award of attorney's fees. The court issued an articulation on June 23, 2004, indicating that it had based the award of attorney's fees "on fifteen (15%) percent fee of the actual award that the plaintiff's attorney gained for his client: $1238 judgment plus $111.72 interest, totaling $1349.72."

As noted, the court held that the defendant violated § 47a-16 by entering the plaintiff's apartment without her permission in a nonemergency situation. Section 47a-18a expressly allows the tenant to recover reasonable attorney's fees. We review a trial court's fee award for abuse of discretion. *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 252, 828 A.2d 64 (2003). "The amount of attorney's fees to be awarded rests in the sound discretion of the trial court and will not be disturbed on appeal unless the trial court has abused its discretion. . . . Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . ." (Citation omitted; internal quotation marks omitted.) *Food Studio, Inc.* v. *Fabiola's*, 56 Conn. App. 858, 865, 747 A.2d 7 (2000). "Judicial discretion is always a legal discretion, exercised according to the recognized principles of equity. . . . The trial court's discretion imports something more than leeway in decision making and should be exercised in conformity with the spirit of the law

and should not impede or defeat the ends of substantial justice." (Citation omitted; internal quotation marks omitted.) *Eldridge* v. *Eldridge*, 244 Conn. 523, 534–35, 710 A.2d 757 (1998).

"It is axiomatic . . . that the determination of reasonableness of attorney's fees appropriately takes into consideration a range of factors . . . ." *Esposito* v. *Esposito*, 71 Conn. App. 744, 749, 804 A.2d 846 (2002). "It is well established that a trial court calculating a reasonable attorney's fee makes its determination while considering the factors set forth under rule 1.5 (a) of the Rules of Professional Conduct."[7] *Schoonmaker* v. *Lawrence Brunoli, Inc.*, supra, 265 Conn. 259; see also *Sorrentino* v. *All Seasons Services, Inc.*, 245 Conn. 756, 775, 717 A.2d 150 (1998). These factors include "the time and labor spent by the attorneys, the novelty and complexity of the legal issues, fees customarily charged in the same locality for similar services, the lawyer's experience and ability, relevant time limitations, the magnitude of the case and the results obtained, the nature and length of the lawyer-client relationship, and whether the fee is fixed or contingent." *Schoonmaker* v. *Lawrence Brunoli, Inc.*, supra, 259. When awarding attorney's fees, the court must consider all of the factors and not seize on one to the exclusion of the others. See

[7] Rule 1.5 (a) of the Rules of Professional Conduct provides in relevant part: "The factors to be considered in determining the reasonableness of a fee include the following:

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2) The likelihood, if made known to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3) The fee customarily charged in the locality for similar legal services;

"(4) The amount involved and the results obtained;

"(5) The time limitations imposed by the client or by the circumstances;

"(6) The nature and length of the professional relationship with the client;

"(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) Whether the fee is fixed or contingent."

*Steiger* v. *J. S. Builders, Inc.*, 39 Conn. App. 32, 39, 663 A.2d 432 (1995).

In this case, the court focused solely on the amount involved and the results obtained when it fixed counsel fees as a percentage of the award of damages. The court ignored the other factors relevant to the reasonableness of attorney's fees in this case. The court did not consider, for example, work performed by the plaintiff's counsel, as documented by the attorney's affidavits, prevailing hourly rates or the award of attorney's fees in similar cases. The court abused its discretion in seizing from the full panoply of relevant factors merely one factor to the exclusion and disregard of the others. See id.

Additionally, establishing attorney's fees, in this instance, merely as a percentage of the award is not an appropriate criterion for determining reasonable attorney's fees because doing so contravenes the statute's purpose of protecting tenants who are victims of illegal entry. Our Supreme Court has recognized the disparity of power between landlords and tenants and has acknowledged that subjecting landlords to the payment of punitive damages materially increases the likelihood of deterring landlords' abuses of power. *Freeman* v. *Alamo Management Co.*, 221 Conn. 674, 683–84, 607 A.2d 370 (1992). The same reasoning is true for the award of reasonable attorney's fees. The award of reasonable attorney's fees may deter violations, encourage tenants to seek relief and ensure competent counsel for tenants who do litigate. The court's narrow interpretation of the attorney's fees provision found in § 47a-18a would have the contrary effect of discouraging tenants whose rights have been violated to seek vindication of their rights.

The judgment is reversed only as to the awards of attorney's fees and damages and the case is remanded

for further proceedings to determine, consistent with this opinion, the reasonable amount of attorney's fees and damages that the plaintiff may recover. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.