## DEBRA PEREZ *v.* D AND L TRACTOR TRAILER SCHOOL
### (AC 29172)

Harper, Lavine and Hennessy, Js.

681

682

Argued February 5—officially released October 27, 2009

*Bruce Matzkin*, for the appellant-appellee (plaintiff).

*Stuart Hawkins*, with whom, on the brief, was *Daniel Shepro*, for the appellee-appellant (defendant).

*Charles Krich*, principal attorney, and *Darcy Jones*, law student intern, filed a brief for the commission on human rights and opportunities as amicus curiae.

*Opinion*

LAVINE, J. The appeal and cross appeal in this matter concern claims of a hostile work environment, vexatious litigation, intentional infliction of emotional distress and attorney's fees. The plaintiff, Debra Perez,

appeals from the judgment of the trial court, rendered after a jury trial, in her favor on her claim of a hostile work environment and in favor of the defendant, C. Donald Lane, Jr., doing business as D & L Tractor Trailer School,[1] on the remaining counts of her complaint. The parties also appeal from the court's award of attorney's fees to the plaintiff. The plaintiff claims that the court (1) abused its discretion with respect to several evidentiary rulings, (2) improperly permitted the defendant's counterclaim to go to the jury and (3) improperly calculated the attorney's fees it awarded her. In his cross appeal, the defendant claims that the court improperly (1) denied his motion for judgment notwithstanding the verdict and (2) awarded the plaintiff attorney's fees.[2] We affirm the judgment of the trial court.

The briefs and record reveal the following relevant procedural history.[3] The plaintiff commenced the

[1] Although the plaintiff commenced the action against D & L Tractor Trailer School, there apparently is no such legal entity. Pleadings and motions filed by the defendant are signed on behalf of C. Donald Lane, Jr., doing business as D & L Tractor Trailer School. The court also captioned its memorandum of decision regarding attorney's fees, in part, as C. Donald Lane, Jr., doing business as D & L Tractor Trailer School. The use of a fictitious or assumed business name does not create a separate legal entity but is merely descriptive of the business. An individual whose trade name follows his name is liable personally for the torts and contracts of his business. See *Monti* v. *Wenkert*, 287 Conn. 101, 135, 947 A.2d 261 (2008). In this opinion, we refer to Lane as the defendant.

[2] The commission on human rights and opportunities (commission) was granted permission to file an amicus brief. In its brief, the commission claims that the court abused its discretion with respect to the amount of its award of attorney's fees and improperly permitted the defendant's counterclaim alleging intentional infliction of emotional distress to go to the jury.

[3] Although the jury found that the plaintiff had proven the allegations of the first count by a preponderance of the evidence, the plaintiff failed to set forth the facts the jury reasonably could have found with citations to the record or transcript. See Practice Book § 67-4 (c) (The contents of an appellant's brief shall contain a "statement of the nature of the proceedings and of the facts of the case bearing on the issues raised. The statement of facts shall be . . . supported by appropriate references to the page or pages of the transcript or to the document upon which the party relies . . . .").

underlying action on February 11, 2005, and during trial filed an amended, four count complaint (amended complaint),[4] dated March 22, 2007, in which she alleged that she had been employed by the defendant from October, 2001, until March 23, 2004, when the defendant terminated her employment. In count one of the amended complaint, the plaintiff alleged that throughout her employment the defendant subjected her to sexual harassment and to harassment on the basis of her ethnicity. The defendant's conduct, it was alleged, had the effect of creating an intimidating, hostile and offensive work environment that interfered with the plaintiff's ability to perform her employment duties. As a result of the defendant's harassment, the plaintiff alleged, she suffered extreme emotional distress. Moreover, she alleged, the defendant's harassment and termination of her employment created an intimidating, hostile and offensive working environment in violation of General Statutes § 46a-60 et seq.[5] She also alleged that on June 10, 2004, she filed a complaint with the commission on human rights and opportunities (commission). On January 25, 2005, the commission issued a release of

The plaintiff also failed to file with the appellate clerk a complete transcript of the proceedings in the trial court. See Practice Book § 63-8 (e) (1).

[4] The amended complaint contained counts one, two, four and five. Count three of the original complaint, alleging common-law abuse of process, was withdrawn as being repetitive of the vexatious litigation claim in count two.

[5] General Statutes § 46a-60 (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section . . . (8) For an employer, by the employer or the employer's agent, for an employment agency, by itself or its agent, or for any labor organization, by itself or its agent, to harass any employee, person seeking employment or member on the basis of sex. 'Sexual harassment' shall, for the purposes of this section, be defined as any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when (A) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (B) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (C) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment . . . ."

jurisdiction, enabling her to bring the present action against the defendant.

In count two, the plaintiff alleged that the defendant terminated her employment on March 23, 2004, and that she subsequently was awarded unemployment benefits, which the defendant initially did not oppose. On August 6, 2004, the defendant, it was alleged, filed a late appeal from the decision awarding the plaintiff unemployment benefits, in which he falsely asserted that he had never received written notice of the award. The plaintiff also alleged that the appeal was filed after she had filed her complaint with the commission. Following a two day hearing, the plaintiff's award was affirmed. The defendant appealed to the unemployment board of review, which dismissed the appeal. The plaintiff alleged that the defendant's appeal was frivolous, without probable cause and was filed with malicious intent to harass her in retaliation for her having filed a complaint with the commission. The plaintiff alleged that the defendant's appeal from the unemployment benefits award constituted vexatious litigation in violation of General Statutes § 52-568. In count four, the plaintiff alleged that the defendant's appeal from her unemployment benefits award violated the provision of the Connecticut Fair Employment Practices Act (act) prohibiting retaliation. See General Statutes § 46a-60 (a) (4). In count five, the plaintiff alleged that by filing an appeal from the unemployment benefits award, the defendant intended to inflict emotional distress on her, knew or should have known the appeal would cause her emotional distress and that she suffered severe emotional distress.

On September 25, 2006, the defendant filed an answer, special defenses and a three count counterclaim in response to the amended complaint dated July 18, 2006. The plaintiff filed a motion to strike the counterclaim, which the court denied on December 6, 2006. On December 20, 2006, the defendant filed an amended

answer, special defense and a single counterclaim. In substance, the defendant's answer denied any allegations of wrongdoing. In his counterclaim, the defendant alleged intentional infliction of emotional distress in that on or about October, 2001, and at relevant times thereafter, the plaintiff made false statements that he had sexually harassed her. He further alleged that the plaintiff intended to inflict emotional distress or she knew or should have known that emotional distress was likely to result from her making false statements about his conduct. The plaintiff inflicted severe emotional distress on him, the defendant alleged, and her false allegations against him were extreme, outrageous and made without basis.

The matter was tried to the jury from March 27 to April 3, 2007. On March 29, 2007, the plaintiff filed a motion to dismiss the defendant's counterclaim.[6] The court did not rule on the motion to dismiss. The jury found in favor of the plaintiff on count one of her amended complaint, but in favor of the defendant on the remaining counts. The jury also found in favor of the plaintiff on the defendant's counterclaim.[7] On April

[6] A motion to dismiss challenges the court's subject matter jurisdiction. See Practice Book § 10-30; *Filippi* v. *Sullivan*, 273 Conn. 1, 8, 866 A.2d 599 (2005). The substance of the plaintiff's "motion to dismiss," however, is that of a motion for nonsuit, as it sought sanctions on the basis of the defendant's failure to comply with discovery requests. See Practice Book § 13-14 (b).

[7] The jury answered various interrogatories as follows.

"1. Was [the plaintiff] subjected to a hostile work environment, consisting of sexual and/or racial harassment by [the defendant] in violation of the Connecticut Fair Employment Practices Act? . . . Answer: Yes

"2A. Do you believe [the plaintiff] incurred damages as a result of [the defendant's] conduct? Answer . . . No . . .

"3. Did [the defendant's] appeal of [the plaintiff's] unemployment benefits terminate in favor of [the plaintiff]? . . . Answer: Yes . . .

"4. Did [the defendant] lack probable cause to file an appeal of [the plaintiff's] unemployment benefits? . . . Answer . . . No

"5. Did [the defendant] bring the unemployment appeal wit[h] malicious intent unjustly to vex and trouble [the plaintiff]? [no response] . . .

"7. Did [the defendant] bring the unemployment appeal in order to retaliate against [the plaintiff] for filing a discrimination complaint against [the defen-

5, 2007, the defendant filed a motion for judgment notwithstanding the verdict as to count one of the plaintiff's amended complaint and a motion to set aside the verdict. The court denied the defendant's motions. Thereafter, on May 15 and June 20, 2007, the court held a hearing on the matter of attorney's fees. On August 7, 2007, the court issued a memorandum of decision awarding the plaintiff $11,500 in attorney's fees. The plaintiff filed a motion to reargue the court's award, which was denied. The plaintiff appealed and the defendant cross appealed.

## I

## PLAINTIFF'S APPEAL

On appeal, the plaintiff claims that the court (1) committed reversible error with respect to certain evidentiary rulings, (2) improperly permitted the defendant's counterclaim to go to the jury and (3) omitted a lodestar finding when awarding her attorney's fees. We disagree with the plaintiff's reviewable claims but are unable to review most of her claims because the record is inadequate for review.[8]

dant] with the [commission]? . . . Answer . . . No . . .

"9. Do [you] find that [the defendant's] appeal of [the plaintiff's] unemployment benefits constituted extreme and outrageous conduct? . . . Answer . . . No . . .

"14. If [you] answered 'Yes' to . . . question 1, 4, 5, 7, or 9, do you believe [that the plaintiff] should be entitled to an award of punitive damages? Answer: Yes

"Defendant's counterclaim . . . Did [the plaintiff] make false statements of sexual harassment against [the defendant]? . . . Answer . . . No . . . ."

[8] See Practice Book § 61-10. To provide a reviewing court with an adequate record, the appellant should provide a brief that substantially complies with Practice Book § 67-4, copies of applicable portions of the transcript; see Practice Book § 63-8; and, when appropriate, seek an articulation from the trial court. See Practice Book § 66-5. Without such a statement and references to the transcript; see Practice Book § 67-4 (c); Brehm v. Brehm, 65 Conn. App. 698, 707, 783 A.2d 1068 (2001) (Landau, J., concurring); it is not possible to determine the harmfulness, if any, of the claimed errors on appeal.

## A

The plaintiff claims that the court abused its discretion by improperly (1) excluding the prior testimony of an unavailable witness, (2) admitting evidence of the defendant's character, (3) admitting testimony that was irrelevant and prejudicial and (4) permitting the defendant to impeach her on a collateral matter, and she claims that those improper rulings constitute reversible error entitling her to a new trial on the vexatious litigation, retaliation and intentional infliction of emotional distress claims. The plaintiff cannot prevail.

"The applicable standard of review for evidentiary challenges is well established. Unless an evidentiary ruling involves a clear misconception of the law, the [t]rial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . ." (Internal quotation marks omitted.) *In re Melody L.*, 290 Conn. 131, 158, 962 A.2d 81 (2009).

### 1

The plaintiff's first evidentiary claim is that the court improperly refused to admit into evidence the prior testimony of the defendant's son, Donald Lane III, given at the unemployment hearing. We disagree.

The following facts are relevant to the plaintiff's claim. Among the individuals the plaintiff's counsel identified as witnesses was the defendant's son. During trial, however, the plaintiff's counsel informed the court that the defendant's son had changed his mind about testifying at trial. In lieu of his testimony, counsel asked that he be permitted to put into evidence the testimony

that the defendant's son gave at the fall 2004 unemployment hearing pursuant to § 8.6 (1) of the Connecticut Code of Evidence.[9] The court refused to admit the testimony, citing General Statutes § 52-160 and *Churchill* v. *Allessio*, 51 Conn. App. 24, 36, 719 A.2d 913 (trial on second, subsequent will was not same action as trial on first will), cert. denied, 247 Conn. 951, 723 A.2d 324 (1998). The court explained that the prior testimony was hearsay given in an unemployment hearing, in which the issues were not the same as those in the present action. Moreover, given the representation of counsel, the defendant's son was not an unavailable witness but an unwilling one. The court, however, offered to appoint a commission to take the deposition of the defendant's son in New Hampshire on Saturday. The plaintiff declined to accept the offer of a commission. On March 29, 2007, the plaintiff asked the court to reconsider its ruling. The court denied the plaintiff's request.

General Statutes § 52-160 provides: "If any witness in a civil action is beyond the reach of the process of the courts of this state, or cannot be found, and his testimony has been taken by the court stenographer or reported *upon a former trial of the action*, a transcript of the record of the testimony, verified by the oath of the stenographer or court reporter, shall be admissible in evidence, in the discretion of the court, *upon any subsequent trial of the action* . . . ."[10] (Emphasis

---

[9] Connecticut Code of Evidence § 8-6 provides in relevant part that "[t]he following are not excluded by the hearsay rule if the declarant is unavailable as a witness: (1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, provided (A) the issues in the former hearing are the same or substantially similar to those in the hearing in which the testimony is being offered, and (B) the party against whom the testimony is now offered had an opportunity to develop the testimony in the former hearing . . . ."

[10] The record discloses that the plaintiff had three audiotapes from the unemployment hearing marked for identification, but the record does not include a verified oath of the stenographer.

added.) The court concluded that the trial in the employment discrimination case was not the same action as the unemployment hearing.

"Connecticut cases recognize the admissibility of a witness' former testimony as an exception to the hearsay rule when the witness subsequently becomes unavailable. E.g., *State* v. *Parker*, 161 Conn. 500, 504, 289 A.2d 894 (1971); *Atwood* v. *Atwood*, 86 Conn. 579, 584, 86 A. 29 (1913); *State* v. *Malone*, 40 Conn. App. 470, 475–78, 671 A.2d 1321, cert. denied, 237 Conn. 904, 674 A.2d 1332 (1996).

"In addition to showing unavailability . . . the proponent must establish two foundational elements. First, the proponent must show that the issues in the proceeding in which the witness testified and the proceeding in which the witness' former testimony is offered are the same or substantially similar. E.g., *State* v. *Parker*, supra, 161 Conn. 504; *In re Durant*, 80 Conn. 140, 152, 67 A. 497 (1907). The similarity of issues is required primarily as a means of ensuring that the party against whom the former testimony is offered had a motive and interest to adequately examine the witness in the former proceeding. See *Atwood* v. *Atwood*, supra, 86 Conn. 584.

"Second, the proponent must show that the party against whom the former testimony is offered had an opportunity to develop the testimony in the former proceeding. E.g., *State* v. *Parker*, supra, 161 Conn. 504; *Lane* v. *Brainerd*, 30 Conn. 565, 579 (1862)." (Citations omitted.) Conn. Code Evid. § 8-6 (1), commentary.

We agree with the court that the unemployment hearing, which is an administrative proceeding, was not the same as a civil action in which claims of a hostile work environment, retaliation, vexatious litigation and intentional infliction of emotion distress are claimed, nor do we view it as being substantially similar. The issues

and the elements of the various causes of action are different. Accordingly, the court did not abuse its discretion by precluding the prior testimony of the defendant's son given at the unemployment hearing.

## 2

The plaintiff's second evidentiary claim is that the court abused its discretion by permitting the defendant to put testimony regarding his character in evidence. The defendant argues that the plaintiff's claim is not reviewable. We agree with the defendant, as the record is inadequate with respect to three of the claims and the fourth was not preserved.

Practice Book § 67-4 (d) (3) provides in relevant part: "When error is claimed in any evidentiary ruling in a . . . jury case, the brief or appendix shall include a verbatim statement of the following: the question . . . the objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; and the ruling." The defendant contends that the plaintiff has not complied with the rules of practice and therefore the claim is not reviewable. We agree that with respect to the testimony of three of the four witnesses, the plaintiff's brief does not comply with our rules of practice. See Practice Book § 67-4 (d) (3). In fact, in her brief, the plaintiff concedes that she failed to order the transcripts regarding their testimony. It is an appellant's duty to provide an adequate record for our review, including the transcript and an electronic version of the transcript. See Practice Book §§ 61-10, 63-8[11] and 63-8A. The court's ruling with regard to the testimony of those three witnesses is not reviewable.

---

[11] Practice Book § 63-8 (a) provides in relevant part: "[T]he appellant shall . . . order . . . from the official reporter a transcript and an electronic version of a transcript of the parts of the proceedings not already on file which the appellant deems necessary for the proper presentation of the appeal. . . ."

As to the character testimony offered by Ephraim Sax Medina, the plaintiff's brief is in compliance with our rules of practice. Medina testified that he had attended the defendant's school and later became one of the defendant's employees. At the time of trial, he owned a pawn shop. The plaintiff objected to the following direct examination:

"[The Defendant's Counsel]: What type of relationship have you maintained with [the defendant]?

"[The Plaintiff's Counsel]: Objection. Relevance.

"The Court: I'll allow it. Go ahead.

"[The Witness]: [The defendant] has basically opened my eyes to . . . what my—what I'm capable of doing, okay? He's—he gave me all the push that I needed in order to open a business; so, for that, I can tell you that . . . he's helped me out. . . . [H]e's inspired me. I told him what my plans were, and he applauded every one of my efforts and I did it.

"[The Defendant's Counsel]: And how has he assisted you in your obtaining your goals?

"[The Plaintiff's Counsel]: Objection again. It's just completely irrelevant.

"The Court: This is supposed to be a hostile workplace.

"[The Plaintiff's Counsel]: But he's—he's talking about how affected—the fact that [the defendant] opened a business in October of [20]06 has something to do with a hostile workplace?

"The Court: I'll allow it. I'll allow it. Go ahead. . . .

"[The Witness]: There was many a time that him and I have had conversations where . . . I felt that I wasn't capable of doing certain things, and he gave me the push and I said that I can do it. . . . I've done so much

for the community thus far that . . . it would be to my advantage to do what I'm doing and I'm doing great at it."

On appeal, the plaintiff claims that the court improperly admitted evidence of the defendant's character in violation of Connecticut Code of Evidence § 4-4.[12] The basis of the plaintiff's appellate claim, improper character evidence, however, was not the basis of her claim at trial, which was relevance. The plaintiff has failed to preserve the claim for our review. "[T]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. This court is not bound to consider claims of law not made at trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of an objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted. . . .

"These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Internal quotation marks omitted.) *State* v. *Bell,* 113 Conn. App. 25, 40, 964 A.2d 568, cert. denied, 291 Conn. 914, 969 A.2d 175 (2009). Here, the plaintiff objected to the subject testimony on the basis of relevance, not character, and failed to preserve the claim for review.

---

[12] Connecticut Code of Evidence § 4-4 (a) provides in relevant part: "Evidence of a trait of character of a person is inadmissible for the purpose of proving that the person acted in conformity with the character trait on a particular occasion . . . ."

3

The plaintiff's third evidentiary claim is that the court improperly admitted prejudicial testimony concerning her use of illicit drugs and making sexual advances[13] that was irrelevant. The defendant claims that the testimony was relevant to the plaintiff's claim of sexual harassment and relevant to her credibility. The record is inadequate for review.

The following facts are relevant to the plaintiff's claim. The defendant called Robert Rinella to testify. During Rinella's testimony, counsel for the defendant asked him if he was aware of any of the habits of the defendant's son. The plaintiff's counsel requested a sidebar conference.[14] When counsel for the defendant resumed his examination, he asked Rinella if he was aware of any illegal activities in which the defendant's son had engaged. Rinella responded that the defendant's son had been "playing with drugs for a very long time." The plaintiff's counsel objected to the answer on the basis of relevance. The court reminded counsel of the sidebar and said that the questioning was foundational. The defendant's examination of Rinella continued:

"[The Defendant's Counsel]: Where have you observed the [defendant's son] engage in drug activity?

"[The Witness]: D & L Tractor Trailer School.

"[The Defendant's Counsel]: Can you give us an instance of when you observed [the defendant's son] in drug activity at D & L Tractor Trailer School? . . .

[13] Although the plaintiff claims that evidence of her sexual advances was irrelevant and prejudicial, she has not briefed that claim. We therefore do not consider it.

[14] In her brief, the plaintiff refers to the substance of the sidebar. A sidebar is a discussion between the court and counsel outside the hearing of the jury. There is no record of the discussion, and we therefore do not know what transpired and do not consider it.

"[The Witness] . . . I believe it was 2003, about June. Around, I think it was June 10. I went up to the office at the Barnum Avenue location looking for [the defendant]. I walked in the office, and I didn't observe anybody at the front desk. I proceeded to walk down— made a right-hand turn, walked down to the first cubicle and observed [the defendant's son] and [the plaintiff] doing cocaine.

"[The Defendant's Counsel]: How do you know they were doing cocaine?

"[The Witness]: Because when I walked in [the defendant's son] had a white residue . . .

"[The Plaintiff's Counsel]: Objection. What is the relevance? Even if it's true, honestly, what is the relevance?

"The Court: *Let the jury decide.*

"[The Plaintiff's Counsel]: It's highly prejudicial.

"[The Witness]: [The defendant's son] had white residue on his nose and on his upper lip, and [the plaintiff] was actually engaging in snorting cocaine off the desk there." (Emphasis added.)

The next day the plaintiff's counsel stated that he wanted to preserve some objections for appeal, specifically as to Rinella's irrelevant and prejudicial testimony about drug use. The court inquired as to whether the plaintiff's counsel had moved to strike the testimony. The plaintiff's counsel stated, "[w]ell, I would move to have it stricken at this point." The court responded, "[o]h, okay."[15] The court took no action on the motion to strike the testimony.

---

[15] "The purpose of requiring trial counsel to object properly is not merely formal: it serves to alert the trial court to purported error while there is time to correct it without ordering a retrial." (Internal quotation marks omitted.) *State* v. *Mullins*, 288 Conn. 345, 374, 952 A.2d 784 (2008).

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative. . . .

"Relevant evidence is excluded, however, when its probative value is outweighed by the danger of unfair prejudice. . . . A determination regarding undue prejudice is a highly fact and context-specific inquiry. [T]he determination of whether the prejudicial impact of evidence outweighs its probative value is left to the sound discretion of the trial court . . . and is subject to reversal only [when] an abuse of discretion is manifest or injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Bell*, supra, 113 Conn. App. 44–45.

"[T]here are [certain] situations [in which] the potential prejudicial effect of relevant evidence would suggest its exclusion. These are: (1) where the facts offered may unduly arouse the jur[ors'] emotions, hostility or sympathy, (2) where the proof and answering evidence it provides may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the [opposing party], having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." (Internal quotation marks omitted.) Id., 45–46.

When the plaintiff's counsel objected on grounds of relevancy to Rinella's testimony regarding his having observed the defendant's son and the plaintiff engaged in illegal drug use, the court stated that the issue was for the jury to decide. In her brief on appeal, the plaintiff claims that the court improperly left it for the jury to determine the relevancy of the testimony. We agree with the plaintiff that it was improper, as a matter of law, for the court to fail to determine whether the testimony was relevant to the issues in the case. We cannot determine, however, whether the testimony was relevant, as the plaintiff failed to set forth the evidence related to the issues in the case. Moreover, the record does not disclose what transpired during the sidebar.

"No precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to the teachings of reason and judicial experience." (Internal quotation marks omitted.) *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 569, 657 A.2d 212 (1995). "One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable." (Internal quotation marks omitted.) *State* v. *Taylor*, 37 Conn. App. 464, 474–75, 657 A.2d 659, cert. denied, 234 Conn. 907, 660 A.2d 859 (1995). "[T]he proffering party bears the burden of establishing the relevance of the offered testimony. Unless a proper foundation is established, the evidence is irrelevant." (Internal quotation marks omitted.) *State* v. *Skidd*, 104 Conn. App. 46, 63, 932 A.2d 416 (2007).

In her brief, the plaintiff failed to set forth the underlying facts the jury could have found by a preponderance of the evidence as they relate to each of her claims. As indicated, the record does not reveal the substance of the sidebar that took place during Rinella's testimony.

The court, however, referred to it later when the plaintiff objected to evidence concerning illicit drug use by the defendant's son. The plaintiff objected to Rinella's testimony about the plaintiff's snorting cocaine. The jury, however, was not excused and, therefore, the defendant's counsel did not have an opportunity to offer an explanation on the record as to why Rinella's testimony was relevant. Without a record or transcript of the relevant court proceedings, we do not know the basis of the defendant's claim that the testimony was irrelevant or whether the plaintiff suffered any unfair prejudice as a result of the evidence having been admitted. See *1525 Highland Associates, LLC* v. *Fohl*, 62 Conn. App. 612, 624, 772 A.2d 1128, cert. denied, 256 Conn. 919, 774 A.2d 137 (2001). For the foregoing reasons, we cannot review the claim.

4

The plaintiff's last evidentiary claim is that the court abused its discretion by permitting the defendant to impeach her on a collateral matter. In her brief, the plaintiff concedes that she did not order a transcript of the testimony and the content of her brief is premised on counsel's memory. An appellant must comply with the rules of practice to provide an adequate record for review. See also Practice Book §§ 63-8, 63-8A and 67-4 (d) (3). This claim is unreviewable.

B

The plaintiff claims that the court improperly permitted the defendant's counterclaim alleging the intentional infliction of emotional distress to go to the jury.[16] We do not agree.

---

[16] In her brief, the plaintiff identified this claim as an evidentiary one governed by the abuse of discretion standard of review, but the substance of her claim is, irrespective of how it is denominated, that the defendant's counterclaim actually is a claim of vexatious litigation, alleged as intentional infliction of emotional distress. Unlike evidentiary claims that are reviewed pursuant to the abuse of discretion standard, a claim concerning the construction of a pleading is a question of law to which the plenary standard

During oral argument, this court noted that the jury had returned a verdict in favor of the plaintiff with respect to the defendant's counterclaim. The plaintiff responded that although she prevailed on the counterclaim, deliberating on the counterclaim improperly influenced the jury's deliberations with regard to her claims of vexatious litigation, retaliation and intentional infliction of emotional distress.[17] Due to the claimed improper influence of the counterclaim, the plaintiff seeks to have the judgment on the vexatious litigation, retaliation and intentional infliction of emotional distress counts reversed and the case remanded for a new trial on those counts. Because she has not demonstrated how she was harmed by the jury's deliberation on the counterclaim, the plaintiff cannot prevail.

"[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Rozbicki* v. *Statewide Grievance Committee*, 111 Conn. App. 239, 240 n.2, 958 A.2d 812 (2008), cert. denied, 290 Conn. 908, 964 A.2d 544 (2009). Moreover, the plaintiff's claim is speculative, as she has failed to identify any underlying "facts of the case bearing on the issues raised"; Practice Book § 67-4 (c); or findings of the court that would lead the court to conclude that the jury was influenced improperly. The plaintiff merely has asserted that "where the jury was given [intentional infliction of emotional distress] claims by each side against the other, there is a strong possibility that [the jury] struck a compromise whereby [it] found against both parties on

---

of review applies. See *Young* v. *Vlahos*, 103 Conn. App. 470, 476, 929 A.2d 362 (2007), cert. denied, 285 Conn. 913, 943 A.2d 474 (2008).

[17] The jury found in favor of the defendant on those claims.

their respective claims . . . ." See *Lederle* v. *Spivey*, 113 Conn. App. 177, 192, 965 A.2d 621 (without factual findings, appellate court's analysis would be mere speculation), cert. denied, 291 Conn. 916, 970 A.2d 728 (2009). The plaintiff cannot prevail, as she has not demonstrated any harm that would entitle her to a new trial.[18]

---

[18] In its amicus brief, the commission claims that the court improperly ruled on the plaintiff's motion to strike and her oral motion to dismiss made at the conclusion of evidence regarding the defendant's claim of intentional infliction of emotional distress. In arguing that the counterclaim fails to state a claim as a matter of law, the commission cites the definition of extreme and outrageous conduct established in *Petyan* v. *Ellis*, 200 Conn. 242, 253, 510 A.2d 1337 (1986). To survive a motion to strike, the commission argues, "the defendant could not simply conclude that the plaintiff's conduct was extreme and outrageous . . . ." The commission further argues that not only did the defendant fail to present evidence to support his counterclaim, but also that the allegations were legally insufficient. Assuming for the sake of argument that the commission is correct, that claim was not preserved at trial. See *In re Lyric H.*, 114 Conn. App. 582, 586, 970 A.2d 782, cert. denied, 292 Conn. 921, 974 A.2d 722 (2009).

The plaintiff filed a motion to strike the defendant's three count counterclaim on September 26, 2006, but she failed to identify the basis of her motion as required by Practice Book § 10-41 ("[e]ach motion to strike raising any of the claims of legal insufficiency . . . shall separately set forth each such claim . . . and shall distinctly specify the reason or reasons for such claimed insufficiency"). In her memorandum of law in support of the motion to strike, the plaintiff claimed that the counterclaim should be stricken because (1) it was alleged by the owner of D & L Tractor Trailer School, who is not the defendant in the action, (2) it did not arise out of the same transaction as the plaintiff's claims, (3) the defamation and negligent infliction of emotional distress claims are time barred, and (4) a business cannot suffer negligent or intentional infliction of emotional distress. The court summarily denied the motion to strike on December 6, 2006, without stating the basis of its decision. See Practice Book § 10-43 (when multiple grounds asserted, judicial authority "shall specify in writing the grounds upon which that decision is based"). The plaintiff failed to seek a written decision or file a motion for articulation. See Practice Book § 66-5; see also *Goodspeed Airport, LLC* v. *East Haddam*, 115 Conn. App. 438, 457, 973 A.2d 678 (2009) (failure to seek articulation of trial court's decision to clarify issue and preserve it for appeal leaves appellate court without ability to engage in meaningful review).

The commission also argues that, as a matter of public policy, counterclaims such as the one alleged by the defendant here should not have been permitted in sexual harassment cases because they constitute intimidation through the legal process.

## C

The plaintiff's last claim is that the court improperly calculated its award of attorney's fees. This claim is not reviewable because the plaintiff failed to request an articulation of the court's memorandum of decision in which it awarded her $11,500 in attorney's fees. The court noted that the general starting point for the calculation of attorney's fees is the lodestar analysis, and, thereafter, the court is permitted to consider the twelve factors set forth in *Johnson* v. *Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). The court's memorandum of decision recites certain evidence presented at the hearing on attorney's fees, but it lacks specific findings of fact and an analysis of the legal grounds on which the court awarded the fees. The plaintiff did not seek an articulation and, thus, has failed to provide an adequate record for review.

Appellate courts "review the trial court's decision to award attorney's fees for abuse of discretion. . . . This standard applies to the amount of fees awarded . . . and also to the trial court's determination of the factual predicate justifying the award. . . . Under the abuse of discretion standard for review, [an appellate court]

The commission contends that the defendant's counterclaim alleging intentional infliction of emotional distress is, in reality, a claim for vexatious litigation. The commission properly points out that sound policy requires that such a cause of action is viable only when prior litigation terminates in favor of the party bringing the action. See *Blake* v. *Levy*, 191 Conn. 257, 263, 464 A.2d 52 (1983); see also *Somers* v. *Chan*, 110 Conn. App. 511, 542, 955 A.2d 667 (2008) (claim for vexatious litigation requires plaintiff to allege previous lawsuit initiated maliciously, without probable cause, terminated in plaintiff's favor). Again, however, because the plaintiff in this case has failed to demonstrate that the jury improperly was influenced by the defendant's counterclaim, we need not address this interesting issue.

Whether the court improperly denied the plaintiff's motion to strike and motion to dismiss on the defendant's counterclaim alleging intentional infliction of emotional distress is not the issue before us. The issue is whether the plaintiff suffered any harm as a consequence of the jury's deliberating on the defendant's counterclaim.

will make every reasonable presumption in favor of upholding the trial court's ruling and only upset it for a manifest abuse of discretion. . . . [Thus] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Brookstone Court, LLC*, 107 Conn. App. 340, 346–47, 945 A.2d 548, cert. denied, 288 Conn. 907, 953 A.2d 651 (2008).

As noted, the jury found in favor of the plaintiff with regard to her claim of a hostile work environment. In answering the interrogatories, the jury indicated that it found that the plaintiff did not incur any damages as a result of the defendant's conduct but that she was entitled to an award of punitive damages. The court held a two day evidentiary hearing and, in a memorandum of decision, awarded the plaintiff $11,500 in attorney's fees. In making its award, the court recited the jury's answers to the interrogatories and quoted *Bodner* v. *United Services Automobile Assn.*, 222 Conn. 480, 610 A.2d 1212 (1992). If awarded, common-law punitive damages "are limited to the plaintiff's attorney's fees and nontaxable costs, and thus serve a function that is both compensatory and punitive." Id., 492. Although the court made reference to common-law punitive damages, it also cited General Statutes § 46a-104.

In its memorandum of decision, the court noted the testimony of the plaintiff's expert witness that a reasonable hourly rate for similar civil rights litigation was $250. Although unfamiliar with the trial work of the plaintiff's counsel, the expert knew of counsel's work several years earlier when he worked in a defense firm. The expert described the plaintiff's counsel as knowledgeable and tenacious.

The court also stated that the plaintiff's counsel submitted an itemized bill for 256.2 hours, plus 24.5 hours

for work associated with the hearing in damages. In response to the court's inquiry, counsel indicated that he had undertaken to represent the plaintiff on a *contingent fee basis*. Counsel was unable to produce a copy of the written fee agreement, and the court asked counsel and the plaintiff to submit signed affidavits as to the initial existence of a fee agreement. Counsel's subsequent affidavit indicated that there was a fee agreement, which he could not locate, and he did not provide the details of the arrangement he made with the plaintiff. The plaintiff's affidavit indicated that she could not find the fee agreement. Counsel also did not have the contemporaneous time sheets he completed for this case, as they were discarded after he transferred the information into a computer. Counsel claimed that the charges listed could be substantiated by the documents referenced in the invoice itself.

The court noted the argument of the defendant's counsel that the plaintiff only was entitled to attorney's fees pursuant to the retainer agreement. Because counsel was representing the plaintiff on a contingent fee basis and the jury had awarded the plaintiff no damages, the defendant argued, the plaintiff's counsel was not entitled to a fee. The defendant's counsel also argued against the award of attorney's fees requested by the plaintiff's counsel, given the lack of contemporaneous time records and counsel's lack of experience. Moreover, the entries on the bill for time allocated were vague and excessive, the defendant asserted. The defendant's counsel also noted that the jury returned a verdict in favor of the defendant on four of the counts submitted.

The court cited several United States Supreme Court cases on the subject of attorney's fees to be awarded to the prevailing party in a civil rights case, including *Hensley* v. *Eckerhart*, 461 U.S. 424, 436, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). The court stated: "The normal

starting point for calculating reasonable attorney's fees to be awarded to a prevailing civil rights plaintiff is the lodestar figure which is arrived at by multiplying the number of hours reasonably expended in the litigation by a reasonable hourly rate. . . . The court, however, must take into account other factors. One is the degree of success obtained." "When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief . . . the only reasonable fee is usually no fee at all." (Citation omitted.) *Farrar* v. *Hobby*, 506 U.S. 103, 115, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992). The court "is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." (Internal quotation marks omitted.) Id., 114.

The court stated that the "jury awarded punitive damages to the plaintiff under an instruction that an award must be based on conduct amounting to a reckless indifference to the rights of others and even an intentional and wanton violation of those rights." The court found it noteworthy that during deliberations, the jury submitted a note inquiring "whether . . . the policy prohibiting sexual harassment was posted in the workplace, which was not raised during the trial. It would appear that the jury was concerned over the testimony of former employees that female employees were subjected to sexual comments on a daily basis."

The court noted that the jury found three of the plaintiff's claims against the defendant to be without merit.[19] With respect to the claim of a hostile work environment, the jury awarded the plaintiff no compensable damages but found that she was entitled to punitive damages.

---

[19] The memorandum of decision does not address how the plaintiff's failure to prevail on three of her claims was taken into consideration when awarding attorney's fees. See *Chopra* v. *General Electric Co.*, 527 F. Sup. 2d 230, 251–52 (D. Conn. 2007) (amount of attorney's fees reduced for unsuccessful unrelated claims).

In referencing the *Johnson* factors to be considered, the court noted that the plaintiff failed to provide evidence regarding the preclusion of other employment by her counsel, the time limitations imposed by the client, and the nature and length of the professional relationship between counsel and the plaintiff. The court stated that it had considered the other criteria and had reviewed each and every factor in evaluating and determining a reasonable award of attorney's fees. The court also stated that it utilized its own familiarity with the complexity of the issues involved as well as its experience and legal expertise. Moreover, the court cited certain rules pertaining to the awarding of attorney's fees in federal civil rights cases; e.g., *Farrar* v. *Hobby*, supra, 506 U.S. 115 ("plaintiff who seeks compensatory damages but receives no more than nominal damages is often" a prevailing party who should receive no attorney's fees).[20] The court awarded the plaintiff $11,500 in attorney's fees.

"[T]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. . . . The courts may then adjust this lodestar calculation by other factors. . . . For guidance in adjusting attorney's fees, Connecticut courts have adopted the twelve factors set forth in *Johnson* v. *Georgia Highway Express, Inc.*, [supra, 488 F.2d 717–19]. The *Johnson* factors are (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the

---

[20] The commission contends that our Supreme Court has discredited the use of *Farrar* in *Simms* v. *Chaisson*, 277 Conn. 319, 331, 890 A.2d 548 (2006). The court's memorandum of decision does not state the extent to which it relied on *Farrar*. See *Commission on Human Rights & Opportunities* v. *Brookstone Court, LLC*, supra, 107 Conn. App. 349–50 (distinguishing facts of *Farrar* and *Simms*).

customary fee for similar work in the community, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client of the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client and (12) awards in similar cases." *Ernst* v. *Deere & Co.*, 92 Conn. App. 572, 576, 886 A.2d 845 (2005).[21]

On appeal, the plaintiff argues that the court abused its discretion in awarding attorney's fees because it did not make a lodestar finding. Although the court referred to the lodestar formula, it did not make a finding as to the number of hours reasonably expended on the litigation and the reasonable hourly rate. The memorandum of decision seems to imply that the court questioned the evidence presented by the plaintiff's counsel with regard to the number of hours he expended on the case, due to the absence of contemporaneous billing records, but the court never made a credibility determination. The court stated that it had considered all of the *Johnson* factors in making its award in addition to its knowledge, legal experience and familiarity with similar cases. The court did not, however, do the analysis needed to explain that it applied its factual findings to the lodestar and *Johnson* factors, as noted in the amicus brief.[22] Compare, e.g., *Simms* v. *Chaisson*, 277 Conn. 319, 323, 335, 890 A.2d 548 (2006) ("[t]he trial court reduced the plaintiffs' requested fee by 20 percent . . . because it determined that the plaintiffs' employment of two attorneys had resulted in some redundancy in the work performed"). The court also did not state

---

[21] With respect to the factors to be considered when determining a reasonable attorney's fee, the court cited rule 1.5 (a) of the Rules of Professional Conduct, which is similar to the factors stated in *Johnson*.

[22] The court also stated in the memorandum of decision that it was permitted to consider the defendant's conduct, but it did not state what conduct it considered and how that conduct affected the award of attorney's fees.

whether it considered the contingent fee agreement between counsel and the plaintiff. See Rules of Professional Conduct 1.5 (a) (8). We find the memorandum of decision to be unclear and, therefore, cannot determine whether the court abused its discretion with regard to its award of attorney's fees. "In the absence of a motion for articulation, we read an ambiguous trial record to support, rather than to undermine, the judgment." (Internal quotation marks omitted.) *Centimark* v. *Village Manor Associates Ltd. Partnership*, 113 Conn. App. 509, 534–35, 967 A.2d 550, cert. denied, 292 Conn. 907, 973 A.2d 103 (2009). We therefore conclude that the court did not abuse its discretion with respect to awarding the plaintiff attorney's fees.

## II

### DEFENDANT'S CROSS APPEAL

In his cross appeal, the defendant claims that the court improperly (1) awarded the plaintiff attorney's fees and (2) denied his motion to set aside the jury's verdict on count one of the plaintiff's complaint. We affirm the judgment of the trial court.

### A

The defendant's first claim is that the court improperly awarded the plaintiff attorney's fees, as she did not incur any litigation expenses. The defendant relies on the so-called common-law American rule regarding awards of attorney's fees. We disagree because the plaintiff's claim is predicated on a statute, specifically § 46a-104.

In this case, the plaintiff's counsel represented the plaintiff on a contingent fee basis. Although the jury found in favor of the plaintiff on her claim of a hostile work environment, it awarded her no compensable damages. Consequently, there was no fee available for counsel, pursuant to the contingency agreement,

despite having prevailed on one count of the amended complaint. The plaintiff alleged her claim of a hostile work environment pursuant to § 46a-60 of the act. The purpose of the act is to protect individuals, in part, from discrimination on the basis of their sex. Section 46a-104 sets forth the relief available to a plaintiff who prevails in a discrimination action: "The court may grant a complainant in an action brought in accordance with section 46a-100 such legal and equitable relief which it deems appropriate including, but not limited to, temporary or permanent injunctive relief, *attorney's fees* and court costs." (Emphasis added.) In this case, the plaintiff requested attorney's fees in her prayer for relief.

In *Simms* v. *Chaisson*, supra, 277 Conn. 319, our Supreme Court upheld an award of substantial attorney's fees under General Statutes § 52-571c. In doing so, our Supreme Court relied on the factors addressed by Justice O'Connor in her concurring opinion in *Farrar* v. *Hobby*, supra, 506 U.S. 121–22. In *Simms*, our Supreme Court explained how Justice O'Connor reasoned that "in addition to the difference between the amount recovered and the damages sought, two more factors must be considered to determine if the plaintiff's victory was de minimis: (1) the significance of the legal issue on which the plaintiff prevailed; and (2) whether the plaintiff's suit accomplished some public goal." *Simms* v. *Chaisson*, supra, 327–28. In this case, the trial court did not address those factors, as the trial court did in *Simms*.

The plaintiff prevailed on her claim of a hostile work environment in that the defendant subjected her to sexual harassment, as well as harassment that was based on her ethnicity. In their briefs, the parties did not set forth the evidence presented at trial, which hampers an appellate court's ability to review claims raised on appeal. The jury, however, found that the defendant created a hostile work environment and, thus, violated

our antidiscrimination laws, specifically § 46a-60 (a) (8). The jury also found that the plaintiff was entitled to punitive damages. An award of reasonable attorney's fees has an intended purpose of deterring discriminatory practices. See *Rodriguez* v. *Ancona*, 88 Conn. App. 193, 203, 868 A.2d 807 (2005). The plaintiff submitted evidence that her counsel expended more than 250 hours on the case and that $250 was a reasonable hourly fee for that type of work. The court, without significant analysis, awarded the plaintiff attorney's fees of $11,500. In view of the jury's verdict, we cannot conclude that the court abused its discretion by awarding the plaintiff attorney's fees.

B

The defendant's second claim is that the court improperly denied his motion for judgment notwithstanding the jury's verdict in favor of the plaintiff on the hostile work environment claim and as to the court's award to her of punitive damages. We do not agree.

"The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence." (Internal quotation marks omitted.) *Rossman* v. *Morasco*, 115 Conn. App. 234, 241, 974 A.2d 1, cert. denied, 293 Conn. 923, 980 A.2d 912 (2009). "Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . that, in the absence of clear abuse, we shall not disturb." (Internal quotation marks omitted.) Id.

The defendant has not briefed his claim that the court improperly failed to set aside the verdict with respect to the hostile work environment. We therefore consider it abandoned. See *In re Melody L.*, supra, 290 Conn. 167–68.

The defendant also claims that the court improperly failed to set aside the jury's finding that the plaintiff

was entitled to punitive damages. At trial, the defendant argued that General Statutes § 46a-100 does not permit a prevailing plaintiff in a discrimination case to be awarded punitive damages. The following colloquy took place between the court and the defendant's counsel:

"The Court: And doesn't § 46a-104 provide that attorney's fees can be . . . awarded?

"[The Defendant's Counsel]: Yes, it does, Your Honor.

"The Court: And haven't I ruled that the only punitive damages I'm going to award are attorney's fees?

"[The Defendant's Counsel]: Yes, Your Honor, but in Connecticut . . . the only fees you can get under punitive damages are attorney's fees.

"The Court: That's all I'm awarding."

Section 46a-104 provides that the prevailing party in a discrimination action may be awarded attorney's fees. The court therefore did not abuse its discretion by denying the defendant's motion for judgment notwithstanding the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.